# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE___AUG 2 7 2015

Fairhurst. C.
for CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Aug. 27 2015

Ronald R. Carpenter
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| GLENDA NISSEN, an individual | ) |
| | ) |
| Respondent, | ) |
| | ) |
| | ) No. 90875-3 |
| | ) |
| v. | ) |
| | ) |
| | ) En Banc |
| | ) |
| PIERCE COUNTY, a public agency, | ) |
| PIERCE COUNTY PROSECUTING | ) |
| ATTORNEY'S OFFICE, a public | ) |
| agency, and PROSECUTOR MARK | ) Filed ___AUG 2 7 2015___ |
| LINDQUIST, | ) |
| | ) |
| Petitioners. | ) |
| | ) |

YU, J.—Five years ago we concluded that the Public Records Act (PRA), chapter 42.56 RCW, applied to a record stored on a personal computer, recognizing that "[i]f government employees could circumvent the PRA by using their home computers for government business, the PRA could be drastically undermined." *O'Neill v. City of Shoreline*, 170 Wn.2d 138, 150, 240 P.3d 1149 (2010). Today we

*Nissen v. Pierce County*, No. 90875-3

consider if the PRA similarly applies when a public employee uses a private cell phone to conduct government business. We hold that text messages sent and received by a public employee in the employee's official capacity are public records of the employer, even if the employee uses a private cell phone.

## BACKGROUND

This case involves two requests for public records that Glenda Nissen, a sheriff's detective, sent to Pierce County (County). Both requests asked for records related to Pierce County Prosecutor Mark Lindquist. One request stated:

> Please produce any and all of Mark Lindquist's cellular telephone records for number 253-861-[XXXX[1]] or any other cellular telephone he uses to conduct his business including text messages from August 2, 2011.

Clerk's Papers (CP) at 15. The other stated:

> The new public records request is for Mark Lindquist's cellular telephone records for number 253-861-[XXXX] for June 7, [2010].[2]

*Id.* at 17 (second alteration in original). The telephone number identified in these requests is connected to Lindquist's private cell phone. There is no dispute that Lindquist personally bought the phone, pays for its monthly service, and sometimes uses it in the course of his job.

---

[1] Though redacted in the record before us, the requests contained the full 10-digit telephone number.

[2] The County has not challenged the breadth or specificity of these requests, and we pass no opinion.

2

*Nissen v. Pierce County*, No. 90875-3

In response to these requests, Lindquist obtained and provided the County with two types of records. The first, which the parties refer to as the "call log," is similar to an itemized statement customers might receive from their service provider each month. It contains information about the dates and times of calls made and received, the length of those calls, and the telephone number of the incoming or outgoing call. Lindquist's service provider, Verizon Wireless, generated the call log and provided it to Lindquist at his request. He voluntarily produced it to the County.

The second type of record reveals information about text messages Lindquist sent and received over two days ("text message log"). The text message log does not reveal the content of those messages. Instead, similar to the call log, it itemizes the date and time of each message and provides the telephone number of the corresponding party. Lindquist also obtained the text message log from Verizon after receiving Nissen's PRA requests and produced it to the County.

The County reviewed the call and text message logs and disclosed partially redacted copies to Nissen. Accompanied by an exemption log, the redactions conceal line items for calls and text messages that Lindquist self-described as personal in nature. The remaining unredacted portions relate to calls and text messages that the County and Lindquist admit might be work related. *See* CP at 490 (Decl. of Mark Lindquist in Supp. of Mot. To Intervene & Join) ("I authorized the release of records of calls that were related to the conduct of government or the

3

*Nissen v. Pierce County*, No. 90875-3

performance of any governmental or proprietary function."); Pierce County's Pet. for Review at 3 ("[T]he Prosecutor authorized the release of records of calls that 'may be work related.'"); Lindquist's Pet. for Review at 10 ("[T]he Petitioner provided those communications that may be 'work related.'"). Thus nearly half of the text messages Lindquist sent or received and many of his phone calls during the relevant period potentially related to his job as the elected prosecutor. The County did not produce the contents of any text message, however, though copies of them exist on Verizon's servers.[3]

Dissatisfied with the County's disclosures, Nissen sued the County in Thurston County Superior Court. She sought an in camera review of Lindquist's text messages and the call and text message logs to determine if all of the information is a public record. Lindquist intervened and moved for a temporary restraining order and preliminary injunction to enjoin further disclosure of records related to his cell phone. He argued that compelling him to disclose his text messages would violate the state and federal constitutions and was prohibited by state and federal statutes. CP at 502-18. That same day the County moved to dismiss Nissen's complaint under

---

[3] The messages apparently no longer exist on Lindquist's phone. In conjunction with her PRA requests, however, Nissen's lawyer contacted Verizon and asked it to preserve all "communications and data [on Lindquist's account] . . . pending the issuance of a subpoena or other legal process." CP at 200. The propriety of that request is not before us.

*Nissen v. Pierce County*, No. 90875-3

CR 12(b)(6). It argued the records at issue could not be public records as a matter of law, because they related to a personal cell phone rather than a county-issued one.

The trial court consolidated the two motions for a hearing. After argument, the trial judge granted the County's CR 12(b)(6) motion, determining as a matter of law that records of private cell phone use can never be public records under the PRA. The Court of Appeals reversed. *Nissen v. Pierce County*, 183 Wn. App. 581, 333 P.3d 577 (2014). Applying the PRA's definition of "public record," the Court of Appeals held that Lindquist's text messages were public records because he "prepared" them in his official capacity. *Id.* at 593-94 (citing RCW 42.56.010(3)). The court further held that the factual record was not sufficiently developed on the issue of whether the call logs also qualify as "public record[s]," noting that the issue turned on whether Lindquist used or retained the logs in his capacity as prosecuting attorney. *Id.* at 595.

We granted the County's and Lindquist's petitions for review, *Nissen v. Pierce County*, 182 Wn.2d 1008, 343 P.3d 759 (2015), and now affirm in part and remand with further instructions.

STANDARD OF REVIEW

We review de novo a CR 12(b)(6) order dismissing a complaint. Dismissal is proper only if we conclude that "the plaintiff cannot prove 'any set of facts which would justify recovery.'" *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007)

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Nissen v. Pierce County*, No. 90875-3

(quoting *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998)). Motions to dismiss are granted "only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE § 357, at 604 (1969)).

Our standard of review in PRA cases is also de novo. *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 715, 261 P.3d 119 (2011).

ANALYSIS

Before turning to the questions this case presents, it is helpful to clarify the questions it does not. This case does not involve a public employer seizing an employee's private cell phone to search for public records. It does not involve a records request for every piece of data on a smartphone. And it does not involve a citizen suing a public employee for access to the employee's phone. Instead, this is an action against an agency for two types of records that, while potentially related to the agency's public business, are in the exclusive control of the agency's employee. This case asks whether those records can nonetheless be "public records" the agency must disclose and, if so, whether there are limits to how the agency may search for and review those records.

*Nissen v. Pierce County*, No. 90875-3

With that in mind, we first interpret the PRA to determine if a record of government business conducted on a private cell phone is a "public record," as the PRA defines the term. We then apply that definition to the specific records here— the call and text message logs and text messages. Finally, we address the mechanics of searching for and obtaining public records held by or in the control of public employees. As explained below, we hold that text messages sent or received by Lindquist in his official capacity can be public records of the County, regardless of the public or private nature of the device used to create them; and we order Lindquist to obtain, segregate, and produce those public records to the County.

## I. THE PRA REACHES EMPLOYEE-OWNED CELL PHONES WHEN USED FOR AGENCY BUSINESS

Our analysis begins with the text of the PRA. By its plain language, the PRA applies "when an 'agency' is requested to disclose 'public records.'" *Dawson v. Daly*, 120 Wn.2d 782, 788, 845 P.2d 995 (1993). Because those are both defined terms, we must interpret the statutory definitions to decide if records of public business an employee conducts on his or her private cell phone are public records. *Senate Republican Campaign Comm. v. Pub. Disclosure Comm'n*, 133 Wn.2d 229, 239, 943 P.2d 1358 (1997). The PRA defines "agency" very broadly as

> all state agencies and all local agencies. "State agency" includes every state office, department, division, bureau, board, commission, or other state agency. "Local agency" includes every county, city, town, municipal corporation, quasi-municipal corporation, or special purpose

7

*Nissen v. Pierce County*, No. 90875-3

district, or any office, department, division, bureau, board, commission, or agency thereof, or other local public agency.

RCW 42.56.010(1). This definition in turn affects what information is a "public record" since it is incorporated into the statutory definition of that term. Under the PRA, a "public record" is

any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function *prepared, owned, used, or retained by any state or local agency* regardless of physical form or characteristics.

RCW 42.56.010(3) (emphasis added).

The definitions of "agency" and "public record" are each comprehensive on their own and, when taken together, mean the PRA subjects "virtually any record related to the conduct of government" to public disclosure.[4] *O'Neill*, 170 Wn.2d at 147. This broad construction is deliberate and meant to give the public access to information about every aspect of state and local government. *See* LAWS OF 1973, ch. 1, § 1(11). As we so often summarize, the PRA "is a strongly worded mandate for broad disclosure of public records." *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 791, 246 P.3d 768 (2011) (quoting *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978))).

---

[4] Disclosing that a public record exists in response to a request does not mean the record will ultimately be produced. Agencies must consider whether any applicable exemption precludes production of part or all of a record. *Sanders v. State*, 169 Wn.2d 827, 836, 240 P.3d 120 (2010).

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## A. Agency Employees Working within the Scope of Employment Create Public Records

Despite that mandate, the County argues public employees can avoid the PRA simply by using a private cell phone, even if they use it for public business and even if the same information would be a public record had they used a government-issued phone instead.[5] The County finds this large gap in the PRA by isolating the statute's definition of "agency," which does not expressly refer to individual employees as agencies. RCW 42.56.010(1). Since county employees like Lindquist are not literally a "county," the County argues its employees and the records they control are completely removed from the PRA's scope.

While that reasoning may have superficial appeal, it misses the central question here. We cannot interpret statutory terms oblivious to the context in which they are used. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10-11, 43 P.3d 4 (2002). As this case does not ask if a public employee is an "agency" with independent obligations separate from those the PRA imposes on the employer, interpreting "agency" in isolation is unhelpful. Nissen's request was directed at the County, not Lindquist.[6] Our task instead is to decide if *records* that a public

---

[5] The County admits that this is the natural result of its interpretation of the PRA. Wash. Supreme Court oral argument, *Nissen v. Pierce County*, No. 90875-3 (June 11, 2015), at 3 min., 4 sec., and 6 min., 57 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

[6] Whether an elected official is independently subject to the PRA is an unsettled question. *See Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 746, 218 P.3d 196 (2009). Here,

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

employee generates while working for an agency are "public records" that the agency must disclose. Thus we must interpret the statutory definitions of "agency" and "public record" together, keeping in mind the purpose those definitions are intended to further. *See Hearst Corp.*, 90 Wn.2d at 128.

One characteristic of a public record is that it is "prepared, owned, used, or retained by any state or local agency." RCW 42.56.010(3). The County is correct that every agency the PRA identifies is a political body arising under law (e.g., a county). But those bodies lack an innate ability to prepare, own, use, or retain any record. They instead act exclusively through their employees and other agents, and when an employee acts within the scope of his or her employment, the employee's actions are tantamount to "the actions of the [body] itself." *Houser v. City of Redmond*, 91 Wn.2d 36, 40, 586 P.2d 482 (1978) (as to cities); *Hailey v. King County*, 21 Wn.2d 53, 58, 149 P.2d 823 (1944) (as to counties). Integrating this basic common law concept into the PRA, a record that an agency employee prepares, owns, uses, or retains in the scope of employment is necessarily a record "prepared, owned, used, or retained by [a] state or local agency." RCW 42.56.010(3).

---

however, Nissen did not sue Lindquist, either in his individual or official capacity. She instead sued the County, alleging that Lindquist's use of his cell phone resulted in public records of the County; Lindquist is a party only because he intervened to enjoin disclosure. The relevant question then is not whether Lindquist is individually subject to the PRA but, rather, whether records he handles in his capacity as the prosecutor are county public records.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

That interpretation is the only logical one considering how agencies conduct business and carry out their obligations under the PRA. *See Dawson*, 120 Wn.2d at 789 (public records were "prepared by the prosecutor's office" because two employees created and compiled them). If the PRA did not capture records individual employees prepare, own, use, or retain in the course of their jobs, the public would be without information about much of the daily operation of government. Such a result would be an affront to the core policy underpinning the PRA—the public's right to a transparent government. That policy, itself embodied in the statutory text, guides our interpretation of the PRA. RCW 42.56.030; LAWS OF 1973, ch. 1, § 1(11); *Hearst Corp.*, 90 Wn.2d at 128.

B. The PRA Captures Work Product on Employee Cell Phones

With that understanding, it is clear that an agency's "public records" include the work product of its employees. And we find nothing in the text or purpose of the PRA supporting the County's suggestion that only work product made using agency property can be a public record. To the contrary, the PRA is explicit that information qualifies as a public record "regardless of [its] physical form or characteristics." RCW 42.56.010(3). In *O'Neill* we held that a city official stored a public record on a private computer in her home by using the computer for city business, 170 Wn.2d at 150, which is consistent with the idea that employees can use their own property and still be within the scope of their employment.

11

*Nissen v. Pierce County*, No. 90875-3

*Dickinson v. Edwards*, 105 Wn.2d 457, 467-68, 716 P.2d 814 (1986). There is no reason to treat cell phones differently. We hold that records an agency employee prepares, owns, uses, or retains on a private cell phone within the scope of employment can be a public record if they also meet the other requirements of RCW 42.56.010(3).

Applying the PRA to employee cell phone use is not new. Though an issue of first impression in this court, many state and local agencies implementing the PRA already conclude that using a private cell phone to conduct public business can create a public record. Over the last several years, agencies have begun adopting policies about private cell phone use and advising employees of the agencies' obligation to preserve all public records. Just as examples:

- "Employees utilizing cell phones for City business must not utilize written cell phone capabilities such as text messaging or email for City business unless such phone is synchronized with the City's computer system so that such electronic records can be maintained according to the State records retention requirements." CITY OF PROSSER, PERSONNEL POLICY MANUAL 32 (2009) (Policy 403: Cell Phone Allowance).

- "All county business generated on personal mobile devices are subject to the Public Records Act. . . . Text messages sent and received on a personal mobile device are not stored in any other form. Employees shall not use texting for any County business." THURSTON COUNTY ADMINISTRATIVE MANUAL (2012) § 10 (Personal Mobile Device Policy).

- "Employees should be aware that work-related texts and voice messages on cell phones are public records subject to the Public Records Act. Employees have a duty to maintain such records in

12

accordance with the Washington Local Government Record Retention Schedules." CITY OF GRANDVIEW, PERSONNEL POLICY MANUAL 88 (2013) (use of personal cellular telephones to conduct city business), http://www.grandview.wa.us/wp-content/uploads/2013/03/ Personnel-Policy-Manual1.pdf.

These policies are comparable to many others around the state and are consistent with the attorney general's understanding of the PRA. *See* WAC 44-14-03001(3). While these interpretations do not bind us, *O'Neill*, 170 Wn.2d at 149, they discredit the County's assertion that private cell phone use has always been treated as outside the PRA.

Similarly unpersuasive is the County's warning that every "work-related" personal communication is now a public record subject to disclosure. Traditional notions of principal-agency law alleviate this concern. For information to be a public record, an employee must prepare, own, use, or retain it *within the scope of employment*. An employee's communication is "within the scope of employment" only when the job requires it, the employer directs it, or it furthers the employer's interests. *Greene v. St. Paul-Mercury Indem. Co.*, 51 Wn.2d 569, 573, 320 P.2d 311 (1958) (citing *Lunz v. Dep't of Labor & Indus.*, 50 Wn.2d 273, 310 P.2d 880 (1957); *Roletto v. Dep't Stores Garage Co.*, 30 Wn.2d 439, 191 P.2d 875 (1948)). This limits the reach of the PRA to records related to the employee's public responsibilities. For instance, employees do not generally act within the scope of employment when they text their spouse about working late or discuss their job on

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

social media. Nor do they typically act within the scope of employment by creating or keeping records purely for private use, like a diary. None of these examples would result in a public record "prepared, owned, used, or retained" by the employer agency in the usual case.[7]

Agencies can act only through their employee-agents. With respect to an agency's obligations under the PRA, the acts of an employee in the scope of employment are necessarily acts of the "state and local agenc[ies]" under RCW 42.56.010(3). We therefore reject the County's argument that records related to an employee's private cell phone can never be public records as a matter of law. Instead, records an employee prepares, owns, uses, or retains within the scope of employment are public records if they meet all the requirements of RCW 42.56.010(3). This inquiry is always case- and record-specific. *Cf. Predisik v. Spokane Sch. Dist. No. 81*, 182 Wn.2d 896, 906, 346 P.3d 737 (2015).

## II. Applying the PRA to the Call and Text Message Logs and Text Messages

We next apply RCW 42.56.010(3) to the records at issue here—the call and text message logs and text messages. To be a public record under RCW 42.56.010(3), information must be (1) a writing (2) related to the conduct of

---

[7] We offer these generic illustrations in response to hypotheticals raised by the County and some amici. Of course, the facts of every case vary. We do not intend these illustrations to have precedential effect.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

government or the performance of government functions that is (3) prepared, owned, used, or retained by a state or local agency. *Confederated Tribes of the Chehalis Reservation v. Johnson*, 135 Wn.2d 734, 746, 958 P.2d 260 (1998). The first element is not in dispute—the parties agree that the call and text message logs and text messages are "writings" under the PRA. *See* RCW 42.56.010(4). The remaining two elements are discussed in turn.

A. Records Relating to the Conduct of Government

Public records must "relat[e] to the conduct of government or the performance of any governmental or proprietary function." RCW 42.56.010(3). This language casts a wide net. In *Confederated Tribes*, for example, we held that records of money paid by Indian tribes into a common fund related to the conduct of the government even though the records related primarily to tribal gaming operations. 135 Wn.2d at 739-43. Since the state received money from the common fund, we determined tribal contributions impacted state government and therefore records of those contributions were public records. *Id.* at 748.

We adopted a similarly broad interpretation in *Oliver v. Harborview Med. Ctr.*, 94 Wn.2d 559, 618 P.2d 76 (1980), which involved medical records of patients hospitalized at a state-owned facility. The records there unquestionably related to individual patients and did not explicitly discuss government operations, but we still held that the records "relat[ed] to the conduct of government" under RCW

*Nissen v. Pierce County*, No. 90875-3

42.56.010(3). From them the public could learn about the "administration of health care services, facility availability, use and care, methods of diagnosis, analysis, treatment and costs, all of which are carried out or relate to the performance of a governmental or proprietary function." *Oliver*, 94 Wn.2d at 566.

Together these cases suggest records can qualify as public records if they contain any information that refers to or impacts the actions, processes, and functions of government.[8]

### B. Records Prepared, Owned, Used, or Retained by an Agency

As explained previously, a public record must also be "prepared, owned, used, or retained" by an agency, which includes an agency employee acting within the scope of employment. But the parties still quarrel over the meaning of these verbs, which requires that we further interpret RCW 42.56.010(3). Statutory interpretation starts with the plain meaning of the language; the plain meaning controls if it is unambiguous. *Campbell*, 146 Wn.2d at 11-12. We may use a dictionary to discern the plain meaning of an undefined statutory term. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (citing *Garrison v. Wash. State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7 (1996)).

---

[8] It is worth repeating that records an employee maintains in a personal capacity will not qualify as public records, even if they refer to, comment on, or mention the employee's public duties.

16

*Nissen v. Pierce County*, No. 90875-3

"*Prepared*." "Prepare" is defined as "to put together"; to "MAKE, PRODUCE"; "to put into written form." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1790 (2002). This interpretation is consistent with previous cases that treat "preparing" a record as creating it. *See Dawson*, 120 Wn.2d at 787 (agency prepared record by "creat[ing] one of the files"); *Oliver*, 94 Wn.2d at 566 (records of patient's hospitalization prepared by the hospital).

"*Owned*." To "own" a record means "to have or hold [it] as property." WEBSTER'S, *supra*, at 1612; *see also O'Neill v. City of Shoreline*, 145 Wn. App. 913, 925, 187 P.3d 822 (2008).

"*Used*." We previously addressed what it means for an agency to "use" a record. We broadly interpreted the term in *Concerned Ratepayers Ass'n v. Pub. Util. Dist. No. 1 of Clark County*, 138 Wn.2d 950, 960, 983 P.2d 635 (1999), holding that the "critical inquiry is whether the requested information bears a nexus with the agency's decision-making process." A record that is prepared and held by a third party, without more, is not a public record. But if an agency "evaluat[es], review[s], or refer[s]" to a record in the course of its business, the agency "uses" the record within the meaning of the PRA. *Id.* at 962.

"*Retained*." To "retain" a record means "to hold or continue to hold [it] in possession or use." WEBSTER'S, *supra*, at 1938.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Nissen v. Pierce County*, No. 90875-3

C. The Text Messages Are Potentially Public Records; the Call and Text Message Logs Are Not

We now apply those definitions to decide if the complaint sufficiently alleges that the call logs and text messages are "public records." Absent an allegation that the County used the call and text message logs, the logs in this case are not public records. The call and text message logs were prepared and retained by Verizon, and Nissen does not contend that the County evaluated, reviewed, or took any other action with the logs necessary to "use" them. *Concerned Ratepayers*, 138 Wn.2d at 962. Though they evidence the acts of a public employee, the call and text message logs played no role in County business as records themselves. We hold that the complaint fails to allege the call and text message logs are "public records" of the County within the meaning of RCW 42.56.010(3) because the County did nothing with them.

We reach a different conclusion as to text messages. Nissen sufficiently alleges that Lindquist sent and received text messages in his official capacity "to take actions retaliating against her and other official misconduct." CP at 14. When acting within the scope of his employment, Lindquist prepares outgoing text messages by "putting them into written form" and sending them. Similarly, he "used" incoming text messages when he reviewed and replied to them while within the scope of employment. Since the County and Lindquist admit that some text

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

messages might be "work related," the complaint sufficiently alleges that those messages meet all three elements of a "public record" under RCW 42.56.010(3).

Transcripts of the content of those text messages are thus potentially public records subject to disclosure, consistent with the procedure discussed below.

### III. SEARCHING FOR PUBLIC RECORDS WITHIN AN EMPLOYEE'S CONTROL

We finally turn to the mechanics of searching for and obtaining public records stored by or in the control of an employee. The County and Lindquist suggest that various provisions of the state and federal constitutions categorically prohibit a public employer from obtaining public records related to private cell phone use without consent.[9] Because an individual has no constitutional privacy interest in a *public* record,[10] Lindquist's challenge is necessarily grounded in the constitutional rights he has in personal information comingled with those public records. We are mindful that today's mobile devices often contain "a 'wealth of detail about [a person's] familial, political, professional, religious, and sexual associations.'" *State v. Hinton*, 179 Wn.2d 862, 869, 319 P.3d 9 (2014) (alteration in original) (quoting *United States v. Jones*, 565 U.S. ___, 132 S. Ct. 945, 955, 181 L. Ed. 2d 911 (2012) (Sotomayor, J., concurring)). As nearly two-thirds of Americans can

---

[9] They primarily cite to the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution.

[10] *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977) (noting public officials have "constitutionally protected privacy rights in matters of personal life *unrelated to any acts done by them in their public capacity*" (emphasis added)).

*Nissen v. Pierce County*, No. 90875-3

now communicate, access the Internet, store documents, and manage appointments on their smartphone, cell phones are fast becoming an indispensable fixture in people's private and professional lives. Text messaging is the most widely used smartphone feature; e-mail is not far behind. Aaron Smith, *U.S. Smartphone Use in 2015,* PEW RESEARCH CTR. (Apr. 1, 2015), http://www.pewinternet.org/2015/04/01/us-smartphone-use-in-2015.

Yet the ability of public employees to use cell phones to conduct public business by creating and exchanging public records—text messages, e-mails, or anything else—is why the PRA must offer the public a way to obtain those records. Without one, the PRA cannot fulfill the people's mandate to have "full access to information concerning the conduct of government on every level." LAWS OF 1973, ch. 1, § 1(11). As noted earlier, many counties, cities, and agencies around the state recognize the need to capture and retain public records created on personal devices. Some of those entities provide employees with a way to preserve public records and avoid any inquiry into their private affairs by, for example, syncing work-related documents, e-mails, and text messages to an agency server or other place accessible to the employer. The County apparently has no such policy.

While a policy easing the burden on employees of preserving public records is certainly helpful, it cannot be a precondition to the public's right to access those records. If it were, the effectiveness of the PRA would hinge on "the whim of the

20

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

public officials whose activities it is designed to regulate." *Mead Sch. Dist. No. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 140, 145, 530 P.2d 302 (1975). The legislature tasks us with interpreting the PRA liberally and in light of the people's insistence that they have information about the workings of the government they created. RCW 42.56.030. Of course, the public's statutory right to public records does not extinguish an individual's constitutional rights in private information. But we do not read the PRA as a zero-sum choice between personal liberty and government accountability. Instead, we turn to well-settled principles of public disclosure law and hold that an employee's good-faith search for public records on his or her personal device can satisfy an agency's obligations under the PRA.

Though technology evolves, segregating public records from nonpublic ones is nothing new for agencies responding to a PRA request. Whether stored in a file cabinet or a cell phone, the PRA has never authorized "unbridled searches" of every piece of information held by an agency or its employees to find records the citizen believes are responsive to a request. *Hangartner v. City of Seattle*, 151 Wn.2d 439, 448, 90 P.3d 26 (2004). The onus is instead on the agency—necessarily through its employees—to perform "an adequate search" for the records requested. *Neigh. All.*, 172 Wn.2d at 720-21. To satisfy the agency's burden to show it conducted an adequate search for records, we permit employees in good faith to submit "reasonably detailed, nonconclusory affidavits" attesting to the nature and extent of

21

*Nissen v. Pierce County*, No. 90875-3

their search. *Id.* at 721. The PRA allows a trial court to resolve disputes about the nature of a record "based solely on affidavits," RCW 42.56.550(3), without an in camera review, without searching for records itself, and without infringing on an individual's constitutional privacy interest in private information he or she keeps at work.

Federal courts implementing the Freedom of Information Act (FOIA), Pub. L. No. 89-487, 80 Stat. 250, allow individual employees to use the same method to self-segregate private and public records. *See, e.g., Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 139-40 (D.D.C. 2011) (declarations sufficient to determine e-mails were not sent in employee's official capacity); *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 288-89 (D.C. Cir. 2006) (affidavits from employees about character of electronic calendars); *Bloomberg, LP v. U.S. Sec. & Exch. Comm'n*, 357 F. Supp. 2d 156, 163 (D.D.C. 2004) (affidavits about "telephone logs" and message slips); *Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 11-12 (D.D.C. 1995); *Gallant v. Nat'l Labor Relations Bd.*, 26 F.3d 168, 171 (D.C. Cir. 1994). While "[a]n agency cannot require an employee to produce and submit for review a purely personal document when responding to a FOIA request[,] . . . it does control the employee to the extent that the employee works for the agency on agency matters." *Ethyl Corp. v. U.S. Envt'l Prot. Agency*, 25 F.3d 1241, 1247 (4th Cir. 1994). Thus, where a federal employee asserts a potentially responsive record is

22

personal, he or she must provide the employer and "the courts with the opportunity to evaluate the facts and reach their own conclusions" about whether the record is subject to FOIA. *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 480-81 (2d Cir. 1999). We already incorporate FOIA's standard for adequate searches into the PRA, *Neigh. All.*, 172 Wn.2d at 720, and we similarly adopt FOIA's affidavit procedure for an employee's personally held public records.

Therefore, we hold agency employees are responsible for searching their files, devices, and accounts for records responsive to a relevant PRA request. Employees must produce any public records (e-mails, text messages, and any other type of data) to the employer agency. The agency then proceeds just as it would when responding to a request for public records in the agency's possession by reviewing each record, determining if some or all of the record is exempted from production, and disclosing the record to the requester. *See generally Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 436-37, 327 P.3d 600 (2013).

Where an employee withholds personal records from the employer, he or she must submit an affidavit with facts sufficient to show the information is not a "public record" under the PRA. So long as the affidavits give the requester and the trial court a sufficient factual basis to determine that withheld material is indeed nonresponsive, the agency has performed an adequate search under the PRA. When done in good faith, this procedure allows an agency to fulfill its responsibility to

23

*Nissen v. Pierce County*, No. 90875-3

search for and disclose public records without unnecessarily treading on the constitutional rights of its employees.

We recognize this procedure might be criticized as too easily abused or too deferential to employees' judgment. Certainly the same can be said of any search for public records, not just for records related to employee cell phone use. But we offer two specific responses. First, an employee's judgment would often be required to help identify public records on a cell phone, even in an in camera review. Text messages, for example, are short communications whose meaning may not be self-apparent. Unlike a chain of e-mails where the preceding messages are often replicated in the body of each new reply, text messages may contain only a few words. The employee then might be needed to put that message into context to determine if it meets the statutory definition of a "public record."

Second, those criticisms spotlight why agencies should develop ways to capture public records related to employee cell phone use. The people enacted the PRA "mindful of the right of individuals to privacy," LAWS OF 1973, ch. 1, § 1(11), and individuals do not sacrifice all constitutional protection by accepting public employment. *City of Ontario v. Quon*, 560 U.S. 746, 756, 130 S. Ct. 2619, 177 L. Ed. 2d 216 (2010). Agencies are in the best position to implement policies that fulfill their obligations under the PRA yet also preserve the privacy rights of their employees. E-mails can be routed through agency servers, documents can be cached

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

to agency-controlled cloud services, and instant messaging apps can store conversations. Agencies could provide employees with an agency-issued device that the agency retains a right to access, or they could prohibit the use of personal devices altogether. That these may be more effective ways to address employee cell phone use, however, does not diminish the PRA's directive that we liberally construe it here to promote access to all public records. RCW 42.56.010(3).

## CONCLUSION

We affirm the Court of Appeals in part. Records that an agency employee prepares, owns, uses, or retains on a private cell phone within the scope of employment can be "public records" of the agency under RCW 42.56.010(3). Nissen's complaint thus sufficiently alleges that at least some of the text messages at issue may be public records subject to disclosure. Because it is impossible at this stage to determine if any messages are in fact public records, on remand the parties are directed as follows. Lindquist must obtain a transcript of the content of all the text messages at issue, review them, and produce to the County any that are public records consistent with our opinion. The County must then review those messages— just as it would any other public record—and apply any applicable exemptions, redact information if necessary, and produce the records and any exemption log to Nissen. As to text messages that Lindquist in good faith determines are not public

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Nissen v. Pierce County*, No. 90875-3

records, he must submit an affidavit to the County attesting to the personal character of those messages. The County must also produce that affidavit to Nissen.

We note that the County responded to Nissen's records requests and produced records in a timely manner based on what we presume was its good-faith interpretation of the PRA. Though we now hold that interpretation is incorrect, penalties are not warranted at this early stage before the County has had the opportunity to comply with our opinion and supplement its response to Nissen's requests accordingly. We reserve for the trial court the issue of penalties going forward.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_____
Yu, J.

WE CONCUR:

_____
Madsen, C.J.

_____
Johnson, J.

_____
Owens, J.

_____
Fairhurst, J.

_____
Stephens, J.

_____
Wiggins, J.

_____
González, J.

_____
Gordon McCloud, J.