**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| JOHN WORTHINGTON, | No. 56427-1-II |
| Appellant, | (consolidated with No. 56457-2-II) |
| v. | |
| WASHINGTON STATE LEGISLATURE, WASHINGTON STATE SENATE, OFFICES OF SENATOR BOB HASEGAWA, WASHINGTON STATE HOUSE OF REPRESENTATIVES, OFFICES OF: Frank Chopp-Chair, Dan Kristiansen-Ranking Minority Member, Joel Kretz-Assistant Ranking Minority Member, Steve Bergquist, Larry Haler, Mark Hargrove, Mark Harmsworth, Jeff Holy, Norm Johnson, Vicki Kraft, John Lovick, Joan McBride, Joyce McDonald, Lilliam Ortiz-Self, Tina Orwall, Eric Pettigrew, Marcus Riccelli, Tana Senn, Larry Springer, Derek Stanford, Pat Sullivan, Gael Tarleton, Luanne Van Werven, J.T. Wilcox, Sharon Wylie, | UNPUBLISHED OPINION |
| Respondents. | |

CRUSER, A.C.J. – John Worthington sent a request under the public records act (PRA)[1] to various Washington legislators, seeking communications from a member of the public. The

---
[1] Ch. 42.56 RCW.

No. 56427-1-II
Consol. No. 56457-2-II

Legislative Defendants[2] provided Worthington with responsive documents, but Worthington was not provided with a specific record that he was looking for.

Worthington filed a lawsuit against the Legislative Defendants, alleging violations of the PRA. One of Worthington's claims was dismissed under CR 12(b)(6), and his other claims were dismissed following hearings on the merits. Worthington appeals the trial court's orders dismissing his claims, arguing (1) the trial court erred by dismissing his claim regarding the destruction of records because Senator Hasegawa was still using the phone he used in 2016; and (2) the trial court erred by dismissing the remainder of his PRA claims because the Legislative Defendants did not show that their searches were adequate.

We hold that Worthington has not shown that the trial court erred by dismissing his PRA claims against the Legislative Defendants. Accordingly, we affirm.

FACTS

I. REQUEST AND INITIAL RESPONSES

On August 27, 2018, Worthington sent the following email, titled "PRA REQUEST," to various Washington legislators:

> Please provide all communications of any form with Joy Beckerman from on [sic] February 26, 2016 5:34 pm, with Senator Hasegawa and his aides and the other members of the House Rules Committee and their legislative aides in 2016, to the list shown below.
>
> All communications would include any personal emails from personal or unknown email accounts and personal phone calls from personal phones and unknown phones.

_____

[2] This opinion uses the term "Legislative Defendants" to refer to all defendants against which Worthington brought his PRA lawsuit, including the Washington State Legislature, the Washington State Senate, the Washington State House of Representatives, and the offices of individual legislators.

2

No. 56427-1-II
Consol. No. 56457-2-II

The list of legislators on this request is as follows.

| |
|---|
| **Chopp, Frank** (D)<br>Chair |
| **Kristiansen, Dan** (R)<br>Ranking Minority Member |
| **Kretz, Joel** (R)<br>Asst Ranking Minority Member |
| **Bergquist, Steve** (D) |
| **Haler, Larry** (R) |
| **Hargrove, Mark** (R) |
| **Harmsworth, Mark** (R) |
| **Holy, Jeff** (R) |
| **Johnson, Norm** (R) |
| **Kraft, Vicki** (R) |
| **Lovick, John** (D) |
| **McBride, Joan** (D) |
| **McDonald, Joyce** (R) |
| **Ortiz-Self, Lillian** (D) |
| **Orwall, Tina** (D) |
| **Pettigrew, Eric** (D) |
| **Riccelli, Marcus** (D) |
| **Senn, Tana** (D) |
| **Springer, Larry** (D) |
| **Stanford, Derek** (D) |
| **Sullivan, Pat** (D) |
| **Tarleton, Gael** (D) |
| **Van Werven, Luanne** (R) |
| **Wilcox, J.T.** (R) |
| **Wylie, Sharon** (D) |

Thank you

John Worthington

Clerk's Papers (CP) at 506-07. The list of individuals that Worthington provided apparently was

not, in fact, the members of the 2016 House Rules Committee.

On September 4, 2018, the public records officer for the senate, Randi Stratton, sent

Worthington a letter informing him that his request was denied at that time due to the legislature's

3

understanding of its obligations under the PRA. But the letter also noted that there was pending litigation[3] regarding the issue of whether the legislature is "fully subject to the disclosure requirements of the" PRA, so potentially responsive records would be retained pending resolution of the case. *Id.* at 510.

Samina Mays, the public records officer for the house of representatives, similarly informed Worthington that, due to the ongoing litigation, records would only be produced if a member of the legislature voluntarily provided them. In addition, the house sought clarification for Worthington's request. Worthington responded with the following:

> 1. When you specified "5:34 pm", do you only seek communications sent or received at that time?
>
> No just originating at that time.
>
> 2. What do you mean by "unknown"?
>
> address associated with the legislator, the aide or a third party associated with a legislator or aide..

*Id.* at 526.

On October 2, 2018, Mays informed Worthington that some members chose to voluntarily disclose emails, and that they searched for representatives Stanford, Tarleton, and Harmsworth but found no emails responsive to the request. In addition, Mays explained that they searched using key words "Joy Beckerman," but offered to run another search if Worthington had an email address for Beckerman that they could search for. *Id.* at 533. Otherwise, Mays indicated, there was nothing more they could do.

---

[3] *Associated Press v. Washington State Legislature*, 194 Wn.2d 915, 454 P.3d 93 (2019) (plurality opinion).

4

In addition, shortly after receiving Worthington's request, Stratton emailed Senator Hasegawa and the senator's 2018 legislative assistant. Stratton explained that the records did not currently fit within the definition of public records applicable to the legislature, but that Senator Hasegawa could "voluntarily" produce records if he wished to do so. *Id.* at 514.

## II. Further Searches by the Legislative Defendants

The supreme court's decision in *Associated Press* was issued in December 2019. On January 14, 2020, the senate sent Worthington a letter stating, "If you would still like us to search for responsive documents, we ask that you submit a new request . . . Otherwise, given the length of time that has passed, we will consider this matter closed."[4] *Id.* at 595. Worthington indicated that he would not submit a new request and that he expected the legislature to respond to his original request.

### 1. Searches by the House of Representatives

In March 2020, Mays sent Worthington a letter after his request was forwarded from the senate. The house of representatives sought additional clarification on Worthington's request:

> 1. Are you seeking communications that involve **all** of the following parties *together*: Joy Beckerman, Senator Hasegawa, **and** the Members of the House Rules Committee listed above and their Legislative Assistants?
> 2. Or are you only seeking communications between Joy Beckerman and the Members of the House Rules Committee listed above and their Legislative Assistants?

*Id.* at 542. Worthington responded, "I was looking for chain communications from Joy Beckerman to the House Rules Committee and to Senator Hasegawa." *Id.* at 541.

---

[4] The letter indicated that, because *Associated Press* "revises the PRA disclosure duties of individual legislators," the legislature was evaluating the case's effect on its current practices and procedures and that this would likely result in a delayed response. CP at 595.

During this time, a public records assistant sent emails with Worthington's request to the members listed in the request and the aides for the listed members who still worked for the legislature. However, by March 2020, seven members (Kristiansen, Haler, Hargrove, Harmsworth, Johnson, McBride, and McDonald) no longer worked for the legislature, and two members (Holy and Stanford) had begun working in the senate. In addition, many of the legislative aides no longer worked for the legislature, and some had begun working for different legislators. In her declaration, Mays explained that she "did not send Worthington's public records request to individuals who did not work for the Legislature in 2020. However, [she] searched the email of former employees." *Id.* at 522.

Mays searched through the emails, calendars, voicemails, and text messages on legislative cell phones for all legislators listed in Worthington's request. She also searched the emails, calendars, and voicemails for all but three legislative aides (Kerns, Gifford, and Trask) who worked for the members listed in the records request in 2016. Text messages were not included because the house of representatives does not issue cell phones to legislative aides. In addition, the house did not issue cell phones to members until 2018.

Following the lawsuit, Mays searched the email for both Kerns and Trask, whose emails had been preserved following their departure from the legislature.[5] Members of the 2016 rules

---

[5] No explanation was given for why Mays never searched the email of Gifford.

6

committee that Worthington did not specifically list in his PRA were not asked for responsive records.[6]

On June 15, 2020, Mays sent Worthington a letter indicating that no additional responsive records were found beyond records already produced, and that his request was considered closed. In response, Worthington stated, "I have given you the exact day and time [of] a public record I know was sent. I have a copy of it. You have not provided all the records pertaining to this request." *Id.* at 551. Mays responded that they had initially run a search of all house members listed in the request using the keyword "Joy Beckerman" on the date February 26, 2016, but that they would add additional keywords to see if any other responsive documents turned up. *Id.* When Mays told Worthington almost 10 days later that they still had not been able to locate anything, Worthington responded, "They would have come from Beckerman and the people she asked to send emails to the rules committee. If that helps." *Id.* at 550. He then sent a follow-up email stating, "It's Beckerman c'c ing [sic] people her email to the rules committee." *Id.* The public records officer said that they would continue looking.

Mays sent Worthington "19 pages of records that were not specifically responsive to his [ ] request," which included emails from Joy Beckerman to various members, but not at the exact

---

[6] Worthington's request was for communications with Joy Beckerman, Senator Hasegawa, and "members of the House Rules Committee and their legislative aides in 2016," but the list of individual legislators he specified in his request did not accurately reflect which representatives were on the house rules committee. *Id.* at 506. Mays' declaration listed the members on this committee in the 2016-17 session and 2017-18 session. Worthington's request was not reflective of either list, but it did include many of the members of the 2016 committee. In a brief at the trial court, the Legislative Defendants indicated that they did not contact the members of the house rules committee in 2016 because they followed Worthington's list of legislators that he specifically sought records from.

time Worthington specified. *Id.* at 524. The emails occurred on February 26, 2016 at 2:47pm and March 29, 2016 at 1:12pm.

### 2. *Searches by the Senate*

In January 2020, Stratton resent Worthington's request to Senator Hasegawa and the senator's 2020 legislative assistant, stating that the request was from 2018 and that Worthington had "asked [them] to fulfill it." *Id.* at 516. In February, Senator Hasegawa's legislative assistant emailed Stratton, saying: "Senator Hasegawa says that 2016 was 2 cell phones ago, so he doesn't have any phone records from then." *Id.* at 389. Stratton responded that she would draft a declaration for Senator Hasegawa's signature. The declaration ultimately signed by Senator Hasegawa on February 26, 2020 stated:

> 4. In the past, on occasion I used my personal cellphone to conduct Senate-related communication within my official capacity as a Senator.
> 5. I have been asked by the Senate to search any personal devices still in my possession for any texts and/or phone calls that are related to or responsive to the attached Public Records Act request.
> 6. On February 24, 2020 I notified the Senate that since 2016, I have changed cellular devices and therefore have no responsive records for the attached request.

*Id.* at 387.

Stratton declared that she searched the emails, calendars, and voicemails for Senator Hasegawa and his legislative assistants from the 2016 legislative session. She produced records including emails from Joy Beckerman, but Stratton was unable to find any communication from February 26, 2016 at 5:34pm. In November 2020, Worthington emailed Stratton complaining that he had not been given an accurate timeline regarding Senator Hasegawa's changing of phones. "Regarding the records request for Senator Hasegawa's phone records, . . . The Senate has not

provided a date specific response. They merely claim the phone was destroyed . . . Please provide

the date specific time the phone was changed." *Id.* at 575.

### III. PRA LAWSUIT

Worthington brought a lawsuit against the Legislative Defendants in December 2020 for

alleged violations of the PRA. His second amended complaint included some of the

communications with Mays and Stratton regarding his request discussed above. In addition,

Worthington included further communications with Stratton regarding Senator Hasegawa's phone.

He received an email from Stratton on August 25, 2020 stating:

> We are sorry that our search did not find the particular communication you were looking for. We have looked again, and have confirmed that Senator Hasegawa's office does not have an email from Joy Beckerman dated February 26, 2016.
>
> As you are aware, in December 2019 the State Supreme Court found that individual legislator offices are state agencies for purposes of the public records act. Before that time, it had always been the understanding of the legislative branch that the legislative definition of public records applied to legislator offices.
>
> In early 2018, after the lower court made its initial finding, legislators' emails were put into a litigation hold, meaning that there was no way to delete anything. Those documents existing as of the date of the hold have been retained, but if a document was deleted prior to that time, there is no way to restore it. If Senator Hasegawa's office received the email you are searching for, it is possible that the email was deleted before 2018.
>
> **Over the years some legislators have used their private cell phones for legislative business on occasion. Senator Hasegawa was unable to search his personal device from 2016, as that cell phone was replaced.**
>
> In order to prevent this problem moving forward, legislators were issued legislative cell phones in 2019 and instructed not to use their private devices for legislative business. Senator Hasegawa received his legislative cell phone on April 9, 2019, and we are able to provide texts from that device in response to public records requests.
>
> As you know from working with us on other requests, we are doing our best to retain, search and produce records in an environment where was is a "record" has

been changing for us. If there's anything else we can do to help you to find what you are looking for, we're happy to do so.

*Id.* at 98-99. Three days later, Stratton sent Worthington another email stating:

As we have explained to you in numerous correspondence, Senator Hasegawa previously used a personal cellphone for some official legislative communications during the timeframe at issue in your request. He is no longer in possession of the cellphone he would have used on February 26, 2016. Responsive documents do not exist. Attached is the declaration you received on February 27, 2020, and again on August 18, 2020, to this effect. Senator Hasegawa's texts were not preserved when his personal cell phones changed in the time between 2016 and today, and there are no further details we can provide. As to the portion of request 18AuS-158/118FS-112, seeking public records related to Senator Hasegawa, we now consider this matter closed. . . . Understand we are not denying your request to inspect these records pursuant to a statutory exemption, but rather trying to explain that the records simply do not exist.

*Id.* at 99.[7] Worthington alleged that he repeatedly requested "phone records confirming the destruction of Senator Hasegawa's phone," but no such records were made available to him. *Id.*

Worthington additionally provided a screenshot of an email showing that not all legislative aides were forwarded an email regarding his records request and, therefore, were not asked for responsive documents.

Worthington's second amended complaint alleged that the Legislative Defendants violated the PRA by failing to conduct an adequate search, silently withholding records, and destroying records before his request was resolved. In addition, Worthington asserted that the legislature, senate, house of representatives, and office of Senator Hasegawa violated the PRA "by failing to provide phone records that show which phone numbers were used by the legislators and when they were discontinued." *Id.* at 101.

---

[7] This email also referred to an apparently separate request that partially involved Senator Rivers, which is not at issue in this appeal.

The Legislative Defendants filed a motion to dismiss under CR 12(b)(6). The trial court granted partial dismissal, finding that the facts alleged in Worthington's second amended complaint "do not support a cause of action for destruction of public records, as it relates to the telephone records of Senator Bob Hasegawa." *Id.* at 635. The trial court found that the records did not exist at the time of the request and, therefore, were not destroyed. The court dismissed the cause of action "related to Senator Hasegawa's telephone records that may have existed prior to the public records request of the plaintiff." *Id.*

The trial court then held hearings on the merits regarding Worthington's other claims. The court dismissed Worthington's remaining claims with prejudice, finding that the Legislative Defendants performed an adequate search in response to Worthington's request. Worthington appeals the trial court's orders dismissing his claims against the Legislative Defendants.

DISCUSSION

## A. LEGAL PRINCIPLES

"The PRA is 'a strongly worded mandate for broad disclosure of public records.' " *Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 408, 259 P.3d 190 (2011) (plurality opinion) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)). Under the general public records disclosure mandate, public agencies are required to produce all public records upon request unless an exemption applies. RCW 42.56.070(1); *Associated Press v. Washington State Legislature*, 194 Wn.2d 915, 921, 454 P.3d 93 (2019). This general disclosure mandate applies to individual legislators' offices. *Associated Press*, 194 Wn.2d at 917-18. If an agency fails to properly respond to a request under the PRA, the requestor can bring an action against the agency. *See* RCW 42.56.550.

Judicial review under the PRA is de novo. RCW 42.56.550(3); *Bainbridge Island Police Guild*, 172 Wn.2d at 407. When evaluating a PRA claim, we "stand in the same position as the trial court." *Bainbridge Island Police Guild*, 172 Wn.2d at 407; *West v. Port of Olympia*, 183 Wn. App. 306, 311, 333 P.3d 488 (2014). In addition, this court reviews an order dismissing a complaint under CR 12(b)(6) de novo. *Nissen v. Pierce County*, 183 Wn.2d 863, 872, 357 P.3d 45 (2015). Dismissal under CR 12(b)(6) is proper only when "the plaintiff cannot prove 'any set of facts which would justify recovery.' " *Id.* (internal quotation marks omitted) (quoting *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007)).

B. ANALYSIS[8]

*1. Claims Dismissed under CR 12(b)(6)*

Worthington argues that the trial court erred by granting the motion to dismiss his claim regarding the destruction of records as to the senate. Worthington asserts (1) that he produced evidence that Senator Hasegawa still had the phone he would have used in 2016, and (2) that he requested phone records to verify that Senator Hasegawa had replaced his phone prior to Worthington's lawsuit, which the senate did not produce. The Legislative Defendants argue that the trial court properly dismissed Worthington's claim regarding destruction of records because there is no cause of action under the PRA for failure to produce records that do not exist—in this

---

[8] Throughout Worthington's brief, he reiterates arguments he made at the trial court and asserts that the Legislative Defendants did not address the arguments and, therefore, have conceded the issues. However, these statements by Worthington simply repeating what he previously argued do not, by themselves, establish any error on the part of the trial court unless supported by further argument. *See* RAP 10.3(a)(6) (directing appellant to include in their brief "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record.").

case, personal phone records showing that Senator Hasegawa began using a new phone. We hold that Worthington has not shown any error in dismissal of his destruction of records claim.

As an initial matter, the evidence that Worthington cites in support of his argument is documentation that Senator Hasegawa had the same phone number both during 2016 and after Worthington filed his PRA request. Setting aside the fact that the evidence Worthington points to was not included in his complaint, all Worthington has shown is that Senator Hasegawa's phone number has remained unchanged. This does not show that Senator Hasegawa still has the same device that he used in 2016. In fact, Worthington's complaint quotes Stratton's emails explaining that Senator Hasegawa "was unable to search his personal device from 2016, as that cell phone was replaced." CP at 98. Accordingly, to the extent that Worthington's argument relies on Senator Hasegawa still using the same device, he has not shown any error in the dismissal of his destruction of records claim.

Second, to the extent that Worthington argues that the senate was required to produce records from Senator Hasegawa's phone service provider in order to show that the phone had been replaced, the senate was under no obligation to produce such records. *See Nissen*, 183 Wn.2d at 882 ("Absent an allegation that the County used the call and text message logs, the logs in this case are not public records.").

We hold that Worthington has not shown error in the trial court's dismissal of his claim regarding the destruction of public records.

*2. Claims Dismissed on the Merits*

Worthington argues that the trial court erred by dismissing the remainder of his PRA lawsuit because the Legislative Defendants did not show that their searches were adequate, given

that several legislators and legislative aides were not asked to respond to the request, and because the declaration provided by Senator Hasegawa regarding his phone was deficient. The Legislative Defendants argue that Worthington's true request was for a specific email and that an adequate search was conducted in an attempt to find it. We hold that the Legislative Defendants conducted adequate searches and did not silently withhold records.

When responding to a public records request, "[t]he onus is [ ] on the agency—necessarily through its employees—to perform 'an adequate search' for the records requested." *Nissen*, 183 Wn.2d at 885 (quoting *Neigh. All. of Spokane County v. City of Spokane*, 172 Wn.2d 702, 720-21, 261 P.3d 119 (2011)). To show that the search was adequate, "the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith. These should include the search terms and the type of search performed, and they should establish that all places likely to contain responsive materials were searched." *Neigh. All.*, 172 Wn.2d at 721. "The adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents," evaluated on a case-by-case basis. *Id.* at 720.

### a. Adequacy of the Senate's Search

Regarding Senator Hasegawa's phone, Worthington argues that Senator Hasegawa and the senate never explained how the senator now using a new device means that he is unable to access the files or his account. In so arguing, it does not appear that Worthington is referring to communications that may have been on Senator Hasegawa's phone, such as emails that be accessed by logging into an email account. Rather, it appears once again that the "files" or "account" that Worthington refers to are Senator Hasegawa's files or account with his personal phone service provider. *See* Appellant's Amended Opening Br. at 26 (files or account "would still

14

be accessible for the next five to seven years," and then later saying "most of the cell phone companies hold records 5 years or more"). Again, the senate is not required to produce records from Senator Hasegawa's personal phone service provider. *See Nissen*, 183 Wn.2d at 882.

Alternatively, to the extent that Worthington did argue that Senator Hasegawa should still have been able to access communications from his phone by logging into an account elsewhere, this argument ignores that Senator Hasegawa's accounts actually were searched: Stratton searched Senator Hasegawa's emails, calendars, and voicemails during the relevant time period and produced emails from Joy Beckerman, just not one at the specific time Worthington indicated. Agencies are not required to search "*every* possible place a record may conceivably be stored, but only those places where it is *reasonably likely* to be found." *Neigh. All.*, 172 Wn.2d at 720. Although the senate's search would not have uncovered text messages or records of phone calls, Senator Hasegawa's declaration stated that those were not available on any device "still in [his] possession" and, therefore, he had no responsive records. CP at 387. Because the senate was not required to obtain records from Senator Hasegawa's personal phone service provider, the senate conducted an adequate search for responsive records.

Therefore, Worthington has not shown that the senate withheld records and did not perform an adequate search simply because it was unable to search Senator Hasegawa's 2016 device.

### b. Adequacy of the House of Representative's Search

Regarding the search performed by the house of representatives, although Worthington's initial request sought "[a]ll communications," the clarifications he made regarding his request to the house of representatives reveal that the communication he sought was an email. *See* CP 538; CP at 550 ("They would have come from Beckerman and the people she asked to send emails to

15

the rules committee. If that helps."; "It's Beckerman c'c ing people her email to the rules committee."); CP at 541 ("I was looking for chain communications from Joy Beckerman to the House Rules Committee and to Senator Hasegawa."). Mays submitted a declaration that she searched the emails, calendars, voicemails, and text messages on legislative phones for all currently employed legislators listed in Worthington's request. She also conducted a similar search for the currently employed legislative aides who worked for the members listed in the request in 2016 (not including phones because the legislature does not issue phones to aides).

Worthington complains that former employees were not asked for responsive records. Not only does Worthington fail to provide any authority for the proposition that former employees are required to provide responsive records to a PRA request, but the record shows that Mays did search the emails of some former employees. Mays' declaration did not specify the search terms, but she informed Worthington that they had run a search with the keyword "Joy Beckerman" for all house members listed in the request. This search was "reasonably calculated to uncover all relevant documents" and, therefore, was an adequate search. *Neigh. All.*, 172 Wn.2d at 720.

We hold that the trial court did not err by dismissing Worthington's claims that the Legislative Defendants silently withheld records and did not perform adequate searches.

CONCLUSION

We hold that Worthington has not shown that the trial court erred by dismissing his claim regarding the destruction of records. In addition, we hold that Worthington has not shown that the trial court erred by dismissing the remainder of his claims because the Legislative Defendants performed adequate searches, and Worthington has not shown that any records were silently withheld. Accordingly, we affirm.

16

No. 56427-1-II
Consol. No. 56457-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

MAXA, J.

VELJACIC, J.