2020 IL App (1st) 190038

No. 1-19-0038

Third Division

August 5, 2020

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BETTER GOVERNMENT ASSOCIATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 17 CH 5181 |
| THE CITY OF CHICAGO OFFICE OF MAYOR | ) | |
| and THE CITY OF CHICAGO DEPARTMENT | ) | |
| OF PUBLIC HEALTH, | ) | Honorable |
| | ) | Michael T. Mullen, |
| Defendants-Appellants. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court, with opinion.
Justices McBride and Howse concurred in the judgment and opinion.

**OPINION**

¶ 1    This matter arises from two Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2016)) requests submitted by plaintiff, the Better Government Association (BGA) to defendants, the City of Chicago Office of Mayor (Mayor's Office) and the City of Chicago Department of Public Health (CDPH). The BGA's requests sought records related to the discovery of lead in the drinking water at Chicago Public Schools (CPS). Defendants appeal from an order of the circuit court directing them to inquire whether relevant records exist in certain of their

officials' personal text messages and e-mail accounts. Defendants primarily argue that these communications are not subject to FOIA because they lack the requisite nexus to a public body. For the following reasons, we affirm the circuit court's order.

¶ 2                                    I. BACKGROUND

¶ 3     The BGA is a not-for-profit watchdog corporation dedicated to "protect[ing] the integrity of the political process in Chicago." On June 7, 2016, the BGA submitted FOIA requests to both the Mayor's Office and CDPH, requesting "[a]ny and all communication *** between Public Health Commissioner Julie Morita and anybody in the mayor's office and press office from April 1, 2016 to today." The BGA subsequently narrowed its requests to "anything related to lead and CPS" involving Eileen Mitchell, Adam Collins, Kelley Quinn, or Mayor Rahm Emanuel in the Mayor's Office and "any and all communication" between Morita and CPS officials Forest Claypool, Doug Kucia, Jason Kierna, Emily Bittner, or Michael Passman. In response, defendants produced some records and redacted or withheld others under various exemptions in section 7(1) of FOIA (*id.* § 7(1)).

¶ 4     On April 11, 2017, the BGA filed a complaint in the circuit court, claiming that defendants violated FOIA by improperly redacting or withholding nonexempt records and by failing to inquire whether the personal text messages and e-mails of the officials named in the requests contained responsive records. The complaint alleged that the Mayor's Office was aware that its officials named in the request had used their personal e-mail accounts to discuss public business. In their amended answer, defendants contended that their redactions and withholdings were proper. The Mayor's Office also admitted that the four officials named in the request used their personal e-

mail accounts for public business but maintained that it had no obligation or ability to search those accounts for responsive records.

¶ 5   On August 21, 2017, the BGA filed a motion for partial summary judgment on the grounds that some of defendants' redactions were improper. In response, defendants argued that they were entitled to summary judgment because they conducted a reasonable search for records and made only appropriate redactions.

¶ 6   Following a hearing on the parties' cross-motions for summary judgment, the circuit court entered an order requiring defendants to submit supplemental affidavits about the nature of their searches. The court also required defendants to provide unredacted copies of the records they produced for *in camera* review. In response to defendants' supplemental briefing, the BGA produced evidence that Collins, Quinn, and Mayor Emanuel had communicated about public business via text message.

¶ 7   After a second round of argument, the court found that defendant's redactions were proper. However, the court also found that defendants did not perform a reasonable search because they failed to include the personal text messages and e-mails of the relevant officials. Consequently, the court ordered defendants to "make inquiries as required to email custodians and supply affidavits from custodians regarding same" within 28 days. The court later granted defendants' motion to stay the order and included a finding that the order was appealable under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). This appeal followed.

¶ 8                                    II. ANALYSIS

¶ 9   "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). Summary judgment is appropriate only where

"the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). Summary judgment is a drastic means of disposing of litigation that should be granted only where the right of the moving party is clear and free from doubt. *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 15. Where, as here, the parties file cross-motions for summary judgment, they agree that there is only a question of law involved and invite the court to resolve the litigation based solely on the record. *Illinois Insurance Guaranty Fund v. Priority Transportation, Inc.*, 2019 IL App (1st) 181454, ¶ 53. A reviewing court may affirm a circuit court's ruling on a motion for summary judgment on any basis in the record, regardless of the reasoning employed by the circuit court. *Kainrath v. Grider*, 2018 IL App (1st) 172270, ¶ 19. A circuit court's ruling on cross-motions for summary judgment is reviewed *de novo*. *Schroeder v. Sullivan*, 2018 IL App (1st) 163210, ¶ 25.

¶ 10          A. FOIA's Applicability to Personal Text Messages and E-mail Accounts

¶ 11     The ultimate issue in this appeal is the adequacy of defendants' search for records. The BGA maintains that the search was inadequate because, at least with respect to the named officials' personal text messages and e-mail accounts, defendants performed no search at all. As they did in the circuit court, defendants contend that they were not required to search their officials' personal accounts because the communications in those accounts are not subject to FOIA. The threshold issue thus becomes whether text messages and e-mails sent from a public officials' personal accounts can qualify as public records under FOIA. For the reasons that follow, we conclude that they can.

¶ 12 Our analysis is guided by the clear purpose of FOIA, which is " 'to open governmental records to the light of public scrutiny.' " *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 405 (2009) (quoting *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989)). Specifically, FOIA was enacted to effectuate "the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act." 5 ILCS 140/1 (West 2016). Section 1 of FOIA explains that "[s]uch access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." *Id.* Accordingly, FOIA is to be construed liberally to promote the public's access to governmental information. *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 25.

¶ 13 Under FOIA, "public records are presumed to be open and accessible." *Id.* Thus, when a public body receives a proper request for information, it must comply with the request unless one of the narrow statutory exemptions applies. *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 463 (2003). If the party seeking disclosure challenges the public body's denial of a request in a circuit court, the public body has the burden of proving that the records in question are exempt. *Id.* at 464. "To meet this burden and to assist the court in making its determination, the agency must provide a detailed justification for its claim of exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing." (Emphasis omitted.) *Baudin v. City of Crystal Lake*, 192 Ill. App. 3d 530, 537 (1989).

¶ 14     Here, defendants do not argue that a statutory exemption applies to their officials' personal text messages and e-mails but rather that the records sought do not qualify as "public records" within the meaning of FOIA in the first place. Section 2(c) of the FOIA defines "public records" as:

> "all records, reports, forms, writings, letters, memoranda, books, papers, maps, photographs, microfilms, cards, tapes, recordings, electronic data processing records, electronic communications, recorded information and all other documentary materials pertaining to the transaction of public business, regardless of physical form or characteristics, having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/2(c) (West 2016).

Accordingly, there are two criteria a record must satisfy in order to qualify as a public record under FOIA. First, the record must pertain to public business rather than private affairs. *City of Danville v. Madigan*, 2018 IL App (4th) 170182, ¶ 19. Second, the record must have been either (1) prepared by a public body, (2) prepared for a public body, (3) used by a public body, (4) received by a public body, (5) possessed by a public body, or (6) controlled by a public body. *Id.*

¶ 15     Defendants do not necessarily contest that their officials' personal text messages and e-mail accounts contain records pertaining to public business. Nor do defendants dispute that the Mayor's Office and CDPH are public bodies under FOIA. Rather, the crux of defendants' argument is their contention that the individual officials named in the BGA's requests are not themselves public bodies. Thus, defendants conclude that those officials' personal e-mails and text

messages are not public records because they were neither prepared for, used by, received by, possessed by, nor controlled by a public body.

¶ 16    FOIA defines a "public body" as:

"all legislative, executive, administrative, or advisory bodies of the State, state universities and colleges, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees, or commissions of this State, any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees thereof." 5 ILCS 140/2(a) (West 2016).

¶ 17    The only Illinois case to examine the interplay between "public records" and "public bodies" as those terms relate to personal communications of public officials is the Fourth District's opinion in *City of Champaign v. Madigan*, 2013 IL App (4th) 120662, a case upon which defendants rely. There, the FOIA requester sought electronic communications relating to public business that were sent and received by individual city council members on their personal devices during city council meetings. *Id.* ¶ 4. On appeal, the City of Champaign argued that those communications were not "public records" under FOIA because the individual city council members were not themselves public bodies. *Id.* ¶ 30. The Fourth District agreed that the individual city council members were not public bodies under FOIA, reasoning that a single council member could not conduct public business alone because "a quorum of city council members is necessary to make binding decisions." *Id.* ¶ 40.

¶ 18    As an example, the court explained that an e-mail from a constituent received by a lone council member on the member's personal device would not be subject to FOIA because no public body was involved. *Id.* ¶ 41. The court went on to say, however, that such an e-mail would become

a public record if it was forwarded to enough council members to constitute a quorum. *Id.* This is so because at that point the e-mail is " 'in the possession of a public body,' " *i.e.* the city council with sufficient numbers to conduct business and make binding decisions. *Id.* The court employed the same logic in holding that the messages the members sent and received on their personal devices during official city council meetings were public records subject to FOIA because they were necessarily sent at a time when the individual members were acting collectively as a public body. *Id.* ¶ 42. The court noted that "[t]o hold otherwise would allow members of a public body, convened as a public body, to subvert *** FOIA requirements simply by communicating about city business during a city council meeting on a personal electronic device." *Id.* ¶ 43. Consequently, the court held that any messages pertaining to public business sent or received by council members' personal devices during council meetings should be provided to the city's FOIA officer for review and any nonexempt material provided in turn to the FOIA requester. *Id.*

¶ 19    Defendants argue that *City of Champaign* shows that the communications requested by the BGA lack the requisite nexus to a public body. We reach the opposite conclusion. Although we agree with defendants that the individual officials identified in the requests are not themselves public bodies under FOIA, this does not mean that their communications about public business cannot be public records. Instead, it is sufficient that the communications were either prepared for, used by, received by, or in the possession of a public body. 5 ILCS 140/2(c) (West 2016); *City of Danville*, 2018 IL App (4th) 170182, ¶ 19. As noted, *City of Champaign* held that communications on the personal account of a member of a public body come into the possession of that body when the communications are sent or received at a time when the body is conducting public business. Applying this principle to the facts of that case, the court concluded that the city council was

capable of conducting public business only when a quorum of council members was involved. By contrast, as defendants conceded at oral argument, the officials in question here are not limited by a quorum requirement. Rather, defendants—through their individual officials such as those named in the requests at issue—can function as public bodies without any official meeting having been convened. For example, the mayor and the director of CDPH can make unilateral decisions that are binding on their respective public bodies. See *Dumke v. City of Chicago*, 2013 IL App (1st) 121668, ¶ 10 n.2 (the mayor of Chicago is the city's chief executive officer responsible for, *inter alia*, directing city departments and appointing department heads). Thus, under *City of Champaign*, the e-mails and text messages from those officials' personal accounts are "in the possession of" a public body within the meaning of FOIA. It is also reasonable to conclude that, at a minimum, many such communications are prepared for or eventually used by the public body. Accordingly, the communications that pertain to public business from the named officials' personal accounts are subject to FOIA.

¶ 20    This conclusion comports with the goals of governmental transparency and accountability underlying FOIA and with our supreme court's instruction to construe FOIA liberally in order to further these goals. See *Special Prosecutor*, 2019 IL 122949, ¶ 25. Indeed, the General Assembly expressed a clear intent that FOIA be interpreted to promote the public's access to information, even when applied in situations where advances in communication technology may outpace the terms of FOIA. 5 ILCS 140/1 (West 2016) ("To the extent that this Act may not expressly apply to those technological advances, this Act should nonetheless be interpreted to further the declared policy of this Act that public records shall be made available upon request except when denial of access furthers the public policy underlying a specific exemption."). As the *City of Champaign*

court recognized, the growing use of personal e-mail accounts and text messages by public officials for public business presents such a situation. Allowing public officials to shield information from the public's view merely by using their personal accounts rather than their government-issued ones would be anathema to the purposes of FOIA.

¶ 21     Although only persuasive authority, our analysis also aligns with those of the few federal courts that have considered the issue under the federal FOIA. See *Special Prosecutor*, 2019 IL 122949, ¶ 55 ("Due to the similarity of the statutes, Illinois courts often look to federal case law construing the federal FOIA for guidance in construing FOIA."). For example, in *Brennan Center for Justice at New York University School of Law v. U.S. Department of Justice*, 377 F. Supp. 3d 428, 436 (S.D.N.Y. 2019), the United States District Court for the Southern District of New York ruled that the Department of Justice was required to ask two of its officials if there were responsive records in their personal e-mail accounts where there was evidence that the officials used their personal accounts for public business. In so ruling, the court stated that it would be inconsistent with the purposes of the federal FOIA to allow the "widespread use of personal devices for official work" to "shunt critical and sensitive information away from official channels and out of public scrutiny." *Id.* Similarly, in *Competitive Enterprise Institute v. Office of Science & Technology Policy*, 827 F.3d 145, 150 (D.C. Cir. 2016), the Court of Appeals for the District of Columbia Circuit also held that documents maintained on an official's private e-mail account were government records subject to FOIA. The court reasoned that:

"The Supreme Court has described the function of [the federal] FOIA as serving 'the citizens' right to be informed about what their government is up to.' [Citation]. If a department head can deprive the citizens of their right to know what his department is up

to by the simple expedient of maintaining his departmental emails on an account in another domain, that purpose is hardly served." *Id.*

¶ 22 Additionally, several of the supreme courts of our sister states have reached similar results. See *Toensing v. Attorney General*, 2017 VT 99, ¶ 20, 206 Vt. 1, 178 A.3d 1000 ("Strong public policy reasons support the conclusion that electronic information stored on private accounts is subject to disclosure under [Vermont's FOIA]."); *City of San Jose v. Superior Court*, 389 P.3d 848, 859 (Cal. 2017) ("The whole purpose of [California's FOIA] is to ensure transparency in government activities. If public officials could evade the law simply by clicking into a different email account, or communicating through a personal device, sensitive information could routinely evade public scrutiny."); *Cheyenne Newspapers, Inc. v. Board of Trustees of Laramie County School District Number One*, 2016 WY 113, ¶ 3, 384 P.3d 679 (Wyo. 2016) ("Because school board members use their personal email addresses to conduct school board business, the request required a search and retrieval of emails from personal email accounts of the board members as well as from the School District's computer system."); *Nissen v. Pierce County*, 357 P.3d 45, 49 (Wash. 2015) (*en banc*) ("We hold that text messages sent and received by a public employee in the employee's official capacity are public records of the employer, even if the employee uses a private cell phone.").

¶ 23 In line with the foregoing case law and the text of FOIA, we hold that communications sent and received from public officials' personal accounts may be "public records" subject to FOIA. In reaching this conclusion we acknowledge but reject each of the several reasons offered by defendants as to why our interpretation is inconsistent with the legislature's intent in enacting FOIA.

¶ 24    First, defendants observe that the *City of Champaign* court suggested that the legislature should expressly clarify whether it "intends for communications pertaining to city business to and from an individual city council member's personal electronic device to be subject to FOIA in every case." *City of Champaign*, 2013 IL App (4th) 120662, ¶ 44. In light of this signal, defendants interpret the legislature's failure to expand the definitions of a public body and public record under FOIA as an indication that the legislature did not intend for the contents of an official's personal accounts to be subject to disclosure. However, defendants' logic cuts both ways: if the legislature intended for officials' personal accounts to never be subject to FOIA, it could have amended FOIA after *City of Champaign*. Because the legislature has declined to amend FOIA in a way relevant here, we may presume that the legislature has acquiesced to *City of Champaign*'s holding that personal account communications are at least sometimes public records. See *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369, 380 (2008) ("[W]here the legislature chooses not to amend a statute after a judicial construction, it is presumed that the legislature has acquiesced in the court's statement of the legislative intent.").

¶ 25    Second, defendants greatly exaggerate the privacy implications of our ruling. Defendants assert that affirming the circuit court's order would "require public bodies to search their employees' private accounts—and potentially their homes and other private locations—in response to almost any FOIA request for communications about public business." Yet the order before us imposes no such requirements. Instead, defendants will merely be required to ask a limited number of officials whether their personal accounts contain responsive records. This approach poses almost no invasion on the privacy interests of public officials and has been persuasively endorsed by several courts. See *Brennan Center*, 377 F. Supp. 3d at 435-36; *City of*

*San Jose*, 389 P.3d at 860; *Nissen*, 357 P.3d at 57-58. If the officials in question have not used their personal accounts to conduct public business, they can so state. Indeed, the BGA concedes that this simple step may well end the litigation because "if the City were to show through legally admissible affidavits following a reasonable search by the relevant employees that no responsive private-account communications exist, case law as it currently stands would often absolve the City of any further responsibility absent a showing to the contrary by BGA."

¶ 26    We further observe that our interpretation of FOIA in no way affects the privacy safeguards that have long been in place. For example, FOIA exempts from disclosure any information "that is highly personal or objectionable to a reasonable person and in which the subject's right to privacy outweighs any legitimate public interest in obtaining the information." 5 ILCS 140/7(1)(c) (West 2016). "Private information" such as the financial information, personal telephone numbers, personal e-mail addresses, and home addresses of public officials also remains exempt. *Id.* §§ 2(c-5), (7)(1)(b). Moreover, any of the statutory exemptions listed in section 7 of FOIA may still apply. We also reiterate that only those communications that pertain to public business are potentially subject to disclosure in the first place. No information concerning the officials' private lives need be disclosed to defendants' FOIA officers. Officials can also avoid any personal account disclosure in the future by simply refraining from the use of personal accounts to conduct public business.

¶ 27    Defendants next observe that the FOIA generally gives a public body five business days to either comply with or deny a records request. See *id.* § 3(d). Defendants' argue that this deadline "cannot be reconciled" with a requirement that they inquire into their officials' personal accounts. However, defendants have shown no reason why they would be unable to ask a handful of their officials whether their private accounts contained responsive records within five business days.

Additionally, FOIA contemplates situations in which the production of requested records might require "additional efforts" for a variety of reasons. *Id.* § 3(e). In these situations, the public body is entitled to an extension of five additional business days. *Id.* FOIA also expressly allows the requester and the public body to agree on an extended deadline of their choosing. *Id.* Thus, we find nothing in the statutory disclosure deadlines inconsistent with our interpretation of FOIA.

¶ 28 Finally, defendants raise concerns about the ability of a public body to compel its officials to turn over responsive records contained in their personal accounts. However, there is no indication that the officials in this case will be unwilling to comply with a court order. Additionally, if the officials prove incalcitrant, FOIA provides that the circuit court may help enforce disclosure through its contempt powers. *Id.* § 11(g) ("In the event of noncompliance with an order of the court to disclose, the court may enforce its order against any public official or employee so ordered or primarily responsible for such noncompliance through the court's contempt powers.").

¶ 29 In sum, we hold that the e-mails and text messages sought by the BGA are public records under FOIA because they pertain to public business and share the requisite connection to a public body. This conclusion is entirely consistent with both the letter and purpose of the statute.

¶ 30                    B. Adequacy of Defendants' Search

¶ 31 Having determined that the e-mails and text messages in question are generally subject to FOIA, we now turn to the ultimate question on appeal, which is the adequacy of defendants' search for responsive records. The adequacy of a public body's search is "judged by a standard of reasonableness and depends upon the facts of each case." *Maynard v. Central Intelligence Agency*, 986 F.2d 547, 559 (1st Cir. 1993). "The crucial issue is not whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested

documents." (Internal quotation marks omitted.) *Id.* Although a public body is not required to perform an exhaustive search of every possible location, the body must construe FOIA requests liberally and search those places that are "reasonably likely to contain responsive records." *Judicial Watch, Inc. v. U.S. Department of Justice*, 373 F. Supp. 3d 120, 126 (D.D.C. 2019). Whether a particular search was reasonable depends on the specific facts and must be judged on a case-by-case basis. *Rubman v. United States Citizenship & Immigration Services*, 800 F.3d 381, 387 (7th Cir. 2015)

¶ 32    When a public body determines that there are no records responsive to a request, it bears the initial burden of demonstrating the adequacy of its search. *Evans v. Federal Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020). An agency typically satisfies this burden by submitting reasonably detailed affidavits setting forth the type of search it performed and averring that all locations likely to contain responsive records were searched. *Id.* Only once the agency has submitted such an affidavit does the burden shift to the requester to produce countervailing evidence that the search was not adequate. *Bayala v. United States Department of Homeland Security*, 264 F. Supp. 3d 165, 172 (D.D.C. 2017).

¶ 33    Here, the BGA's requests sought communications from the relevant officials' personal text messages and e-mail accounts. The BGA also presented some initial evidence that the officials in question used their personal accounts for public business. However, defendants conducted no inquiry into these accounts based on their erroneous position that the accounts could not contain public records within the meaning of FOIA. Thus, defendants' search was not reasonably calculated to capture all sources where responsive records were likely to exist.

¶ 34    Even so, defendants maintain that they were not obligated to inquire about the personal accounts of their officials because the BGA did not show that the accounts were likely to contain responsive records. In support, defendants rely on two federal district court cases, *Hunton & Williams LLP v. U.S. Environmental Protection Agency*, 248 F. Supp. 3d 220 (D.D.C. 2017), and *Wright v. Administration for Children & Families*, No. 15-218, 2016 WL 5922293 (D.D.C. Oct. 11, 2016).[1] In both of these cases, the court held that an agency was not required to further inquire into the personal accounts of their officials where the requester merely speculated that the officials might have used their accounts for public business. *Hunton*, 248 F. Supp. 3d at 238; *Wright*, 2016 WL 5922293, at *9. However, both cases are distinguishable for two reasons. First, the question in those cases was whether the requesters overcame the presumption of a good faith search where the agencies carried their initial burdens. *Hunton*, 248 F. Supp. 3d at 238 n.17 (agencies' search presumed adequate where they inquired into some of their employees' personal accounts and submitted declarations attesting that a further search was not likely to be fruitful because all work was done through agency accounts); *Wright*, 2016 WL 5922293, at *8 (presuming officials complied with a federal law requiring them to ensure that any communications related to government business done via their personal accounts were also preserved on agency systems). Here, no such presumption exists because defendants have admittedly performed no inquiry into their officials' personal accounts based on an erroneous interpretation of FOIA. Additionally, defendants never contested in the circuit court that the officials named in the request used their personal accounts for public business. Although on appeal defendants contend that at least CDPH

---

[1]We note that both cases cited by defendants support the proposition that FOIA extends to public officials' personal e-mails and text messages. See *Hunton*, 248 F. Supp. 3d at 237; *Wright*, 2016 WL 5922293, at *7-8.

Director Morita only used her government-issued account, there is nothing in the record from Morita to support this proposition. Second, the BGA produced precisely the kind of evidence of personal account usage that was lacking in *Hunton* and *Wright*. *Hunton*, 248 F. Supp. 3d at 237 (suggesting evidence that a specific private e-mail address had been used for agency business is sufficient to require a search); *Wright*, 2016 WL 5922293, at *9 (same). Indeed, defendants have admitted that the named officials in the Mayor's Office used their personal e-mail accounts for public business. The BGA has also submitted evidence that some of the named officials have communicated about public business via text messages. This evidence was sufficient to require defendants to at least ask its officials whether they used their personal accounts for public business.

¶ 35                                    III. CONCLUSION

¶ 36    In sum, we hold that communications pertaining to public business within public officials' personal text messages and e-mail accounts are public records subject to FOIA. The BGA submitted sufficient evidence to establish a reason to believe that defendants' officials used their personal accounts to conduct public business. Defendants' refusal to even inquire whether their officials' personal accounts contain responsive records was therefore unreasonable under the facts of this case. Accordingly, we affirm the order of the circuit court directing defendants to inquire whether the relevant officials used their personal accounts for public business.

¶ 37    Affirmed.

---

**No. 1-19-0038**

---

| | |
|---|---|
| **Cite as:** | *Better Government Ass'n v. City of Chicago Office of Mayor*, 2020 IL App (1st) 190038 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CH-5181; the Hon. Michael T. Mullen, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Mark A. Flessner, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Ellen Wight McLaughlin, Assistant Corporation Counsel, of counsel), for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Joshua Burday, Matthew Topic, and Merrick Wayne, of Loevy & Loevy, Chicago, for appellee. |

---