IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LORI SHAVLIK,<br><br>Respondent,<br><br>v.<br><br>SNOHOMISH COUNTY,<br><br>Petitioner. | No. 85174-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — In this Public Records Act[1] (PRA) case in which plaintiff Lori Shavlik seeks records from Snohomish County, the trial court denied Snohomish County's motion to quash a subpoena directing a superior court judge to appear for a deposition. The court also denied the County's motion for a protective order prohibiting Shavlik from deposing the judge pursuant to another subpoena. Because Shavlik made no showing that the judge's testimony was relevant to her PRA claims, the trial court abused its discretion by denying the County's motions. Therefore, we reverse and remand for further proceedings consistent with this opinion.

FACTS

On April 10, 2020, Lori Shavlik made the following public records request to Snohomish County for records related to former deputy prosecutor George

---

[1] Chapter 42.56 RCW.

Appel, who subsequently became a Snohomish County Superior Court judge:

> Please searc[h] ALL records relating to George F. App[el] and
> Dawson Place from 2005-2008.
>
> No court records, but rather Prosecutor records while George F[.]
> Appel was assigned to the SAU Unit in Snohomish County
> assigning him to work at 2722 Colby Ave. This will include his
> employment files.

Shavlik had previously sued the Child Advocacy Center of Snohomish County at Dawson Place (Dawson Place), which houses the Snohomish County Prosecuting Attorney's Office's Special Assault Unit, or "SAU" (2017 lawsuit).[2] See Shavlik v. Dawson Place, 11 Wn. App. 2d 250, 253, 452 P.3d 1241 (2019); Judge Appel presided over a hearing in the 2017 lawsuit and made the following disclosure:

> Before we get under way, lest there be any curiosity, this
> disclosure. I used to work for the prosecutor's office. I worked there
> until the end of 2008 and was, in fact, assigned to the Special
> Assault Unit in the prosecutor's office between 2003 and 2005,
> leaving there to go to a different unit at the end of 2005.
> So I was never actually assigned to Dawson Place.
> However, I was assigned to the unit that eventually wound up going
> to Dawson Place. And there may possibly have been some people
> in the Special Assault Unit when I was there who then went to
> Dawson Place, although I'm not sure about that.

On April 13, 2020, the County acknowledged receipt of Shavlik's public records request, to which it assigned tracking number K040880 (first request), and indicated that "public records (if any) responsive to this request, as we currently understand it, will be available on or before May 17, 2020."

---

[2] In its opening brief, the County asserts that Shavlik made frivolous filings in this and other litigation. Shavlik moves to strike these assertions, arguing that her litigation history is not relevant, was not before the trial court, and constitutes inadmissible character evidence. We deny Shavlik's request to strike; however, we need not and do not consider the County's allegations about Shavlik's litigation tactics.

On May 15, 2020, the County notified Shavlik by e-mail that records responsive to her first request were ready but were too large to send through e-mail. The County thus invoiced Shavlik for scanning the documents and making them available to her on a compact disc.

On June 28, 2020, Shavlik made another public records request (second request) to the County:

Please provide ALL records relating to

George F. B. Appel (how ever file is kept as an employee since many alias are used)

AND

Dawson Place
(Snohomish County Child Advocacy Center)

Please keep in mind that I am asking for the records RE: 2005- to 2009 records FIRST, then search the rest of the date up until present date after all of the records from 2005-2009 have been provided.

On July 7, 2020, the County acknowledged by e-mail that it had received the second request, to which it assigned tracking number K042784, and indicated that "we anticipate that an installment will be available on or before August 7, 2020." The County also noted that Shavlik "previously made a similar request—K040880—that is still pending payment," that the second request "appears to partially encompass the same records as" the first request, and that Shavlik "may receive the same records in response to both requests."

On July 9, 2020, Shavlik responded to the County's e-mail, asking, "Can you please provide me with an inspection / Copy Date?" The County responded that "in-person PRA services" were suspended until August 1, 2020, pursuant to

the governor's Proclamation 20-28 related to the COVID-19 pandemic. Accordingly, it tentatively scheduled an inspection date of August 11, 2020 for its responses to both the first and second requests. The County rescheduled the inspection date multiple times as the governor extended Proclamation 20-28.

In March 2021, the County notified Shavlik that it could offer her an online inspection of responsive records, and asked her to "let us know at your earliest convenience if you would like to avail yourself [of] online records inspection." Shavlik asked the County why it could not provide the responsive records "by drop box [for] free," and the County responded, "The fee is for scanning. The age of the records means that they are all paper records and the County charges per sheet for scanning."

On April 7, 2021, the County notified Shavlik that an online records inspection had been set up for her, and Shavlik responded, "I can not creat[e] an account to view the files, so in the alternative provide the records or set an appointment for me to copy and inspect." The County responded that it would contact her to schedule an in-person inspection "once the emergency declarations prohibiting in-person County business are lifted."

On September 20, 2021, the County e-mailed Shavlik in response to a voicemail she left regarding her requests. It wrote, "By way of your email dated April 7, 2021, you have let us know that you do not want to avail yourself [of] the online inspection process." It also notified Shavlik that although its public records policy "normally provides that if a requestor fails to claim, review or pick-up an installment [of] records within a 30 day period after initial notification, the County

may close the request," but in light of the COVID-19 state of emergency, it would "continue to adhere to its policy of not closing requests because of nonpayment" until Proclamation 20-28 was rescinded or the COVID-19 state of emergency terminated, "whichever occurs first."

Three days later, Shavlik filed the instant lawsuit against the County, alleging that the County violated the PRA in processing the first and second requests.[3] Shavlik also alleged that Judge Appel had not been honest about his relationship to Dawson Place. Then, in April 2022, Shavlik obtained a subpoena directing Judge Appel to appear for a deposition and produce the following documents listed in an "Exhibit A" to the subpoena:

1. Emails, and telephonic communications that fit in the parameters of this lawsuit.

2. Documents that fit in the parameters of this lawsuit.

3. All records relating in any way to the 2) public records # K040880 and K042784.

4. [M]eetings, subject matter of meetings that fit in the parameters of this lawsuit.

5. All documents relating to Dawson Place. AKA Snohomish County Child Advocacy Center AKA Dawson Place.

6. [A]ll records relating to Three address: 2722 Colby Ave Everett WA 98201 1509 California Ave Everett WA 98201 3000 Rockefeller Everett WA 98201

7. All records relating to the employment of George Appel and his wife that mentions Dawson Place.

The County moved to quash the subpoena, arguing that it exceeded the

---

[3] Shavlik's complaint also alleged PRA violations related to four other PRA requests, which are not at issue on review.

5

scope of allowable discovery. The trial court concluded that although Shavlik "is entitled to ask this particular witness whether he's got any records in his own possession that might be relevant to this particular case," Exhibit A to the subpoena was overly broad and "somewhat looks like a fishing expedition." Accordingly, the court quashed the subpoena "as it's issued right now, . . . with Exhibit[ ] A attached to it," and it indicated that Shavlik could propose a subpoena without an exhibit attached.

Shavlik followed through with that proposal, and on June 24, 2022, the trial court issued a second subpoena that directed Judge Appel to appear for a deposition but did not direct him to produce any documents. The County moved to quash the second subpoena, and the trial court denied the motion, reasoning that Judge Appel might have relevant information about the records Shavlik was requesting. That said, the court indicated that "if a deposition happens, . . . it should be limited only to any knowledge [Judge Appel] has of County records that aren't privileged . . . or are not chamber[s] records . . . and whether . . . he has any possession of those County records that would be responsive to [Shavlik's] request." The court asked the parties to prepare an order and, if they were unable to come to an agreement, to set a presentment hearing. It also stayed Judge Appel's deposition pending entry of an order.

On September 20, 2022, before the court had entered an order on the County's second motion to quash, Shavlik sought and obtained a third subpoena to depose Judge Appel. The County responded by moving for a protective order prohibiting Shavlik from deposing Judge Appel pursuant to that subpoena. In

support of its motion, the County provided a declaration from Judge Appel in which he attested that "to the best of [his] knowledge, Dawson Place did not yet exist until after [he] had been rotated from the . . . SAU" and that he "did not have an office at Dawson Place . . . (when it was located . . . at 2722 Colby Ave. or otherwise). Judge Appel also attested, among other things:

> 10.     I am aware that the litigation under this Superior Court cause number concerns, among other things, two requests made by the plaintiff to Snohomish County under the [PRA] for records concerning: 1) myself and/or my employment as a DPA in the Criminal Division of the Snohomish County Prosecuting Attorney; and 2) Dawson Place CAC.
> 11.     As a Superior Court judge, my duties do not include collecting records in response to requests made to Snohomish County under the [PRA]. Nor am I involved in the establishment or implementation of County policies regarding responses to requests made to the County under the [PRA]. Accordingly, I was not involved in the response to plaintiff's public records requests at issue, either in terms of searching for and collecting records or in terms of making decisions regarding their production and availability to the plaintiff.

On October 13, 2022, Shavlik obtained a fourth subpoena directing Judge Appel to appear for a deposition on October 21, 2022. The County moved to quash because no order had yet been entered on the County's motion to quash Shavlik's second subpoena and because the County's motion for a protective order in response to the third subpoena remained pending. The trial court granted the motion to quash the fourth subpoena and set a hearing for (1) presentment of an order on the County's motion to quash the second subpoena and (2) consideration of the County's motion for a protective order in relation to the third subpoena.

After a hearing on March 15, 2023, the trial court entered written orders

7

(1) denying the County's motion to quash the second subpoena and (2) denying the County's motion for a protective order in relation to the third subpoena. The court authorized Shavlik to depose Judge Appel subject to the following conditions:

> a. Such deposition shall take place on a mutually agreed date and time, subject to Judge Appel's and counsel for the County's availability.
>
> b. In accordance with the Washington Supreme Court's Order Regarding Court Operations After October 31, 2022, No. 25700-B-697, the deposition shall take place remotely and shall not be recorded other than by a certified stenographer/court reporter . . . .
>
> c. Examination of the deponent shall be limited to the following: 1) Judge Appel's possession or knowledge of records responsive to Plaintiff's Records Requests, if any (but not including the contents of such records, if any); 2) matters explicitly raised by Judge Appel in his declaration.
>
> d. Plaintiff shall not inquire into orders issued, or cases heard, by Judge Appel in which Ms. Shavlik or a member of Ms. Shavlik's family was a party. Plaintiff shall not inquire into matters unrelated to or post-dating Judge Appel's former employment with the Snohomish County Prosecutor's Office. Judge Appel is permitted to decline to answer questions based on a belief that answering the question may violate the Rules of Professional Conduct, the Code of Judicial Conduct, or would otherwise reveal his thought processes or mental impressions attendant to his judicial decision-making. *To the extent Plaintiff believes that Judge Appel's refusal to answer questions is not well-grounded or in good faith, she may bring a written motion to compel in accordance with the Civil Rules.*

The court also ordered that if the County sought discretionary review, no deposition could take place until this court issued a mandate or certificate of finality. The County moved for discretionary review, which this court granted.

ANALYSIS

The County argues that the trial court erred by denying its motion to quash and its motion for a protective order. We agree.

We review a trial court's discovery orders for an abuse of discretion. McCallum v. Allstate Prop. & Cas. Ins. Co., 149 Wn. App. 412, 419, 204 P.3d 944 (2009). "[T]he civil rules control discovery in a PRA action." Neigh. All. of Spokane County v. Spokane County, 172 Wn.2d 702, 716, 261 P.3d 119 (2011). Under those rules, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." CR 26(b)(1). Evidence is relevant if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

Here, Shavlik's complaint alleged that the County violated the PRA by "withholding" records and "not provid[ing] [them] when they said they would," not providing further responses or updates when the county " 'reopened,' " not providing any records, "[d]en[ying] [i]nspection and demanding fees," "delet[ing] the records from govqa and combin[ing] this request behind another request," failing to conduct an adequate search, and failing to provide an adequate response. As the County points out, each of these claims is focused on whether the County complied with its obligations under the PRA in processing Shavlik's records requests. Those obligations consisted of providing reasonable estimates of the time required to respond and the charges for copies, and adequately searching for—and producing—responsive records. See RCW 42.56.550(1)-(2)

9

(establishing causes of action based on an agency's denial of "an opportunity to inspect or copy a public record" and for an agency's failure to make a "reasonable estimate" of the time required to respond or of the charges to produce copies); WASH. STATE BAR ASS'N, PUBLIC RECORDS ACT DESKBOOK: WASHINGTON'S PUBLIC DISCLOSURE AND OPEN PUBLIC MEETINGS LAWS § 16.2 (2d ed. 2014) ("denial of access" claims include claims that an agency failed to produce records or failed to adequately search for records). To that end, the trial court found that "Judge Appel was not involved in responding to [Shavlik]'s Public Records Requests or in establishing or implementing Snohomish County's policies and procedures concerning the production of public records—including in response to [Shavlik]'s Public Records Requests."

Yet the court *also* concluded that records Judge Appel "may have created or possessed (or have knowledge concerning), if any," were relevant to Shavlik's PRA claims. This was error. Whether Judge Appel had knowledge of or possessed documents responsive to Shavlik's requests does not make any more or less probable whether the County adequately searched for and produced responsive records.[4] This is so because " '[t]he focal point of the judicial inquiry *is the agency's search process, not the outcome of its search*. The issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.' " Forbes v. City of Gold Bar, 171 Wn. App. 857, 866, 288 P.3d 394 (2012) (internal quotation marks omitted; some emphasis added) (quoting Trentadue v. Fed. Bureau of

---

[4] Nor does it make it any more or less probable whether the County provided reasonable estimates of the time required to respond to Shavlik's requests and the cost to produce copies.

10

Investigation, 572 F.3d 794, 797-98 (10th Cir. 2009)); see also Neigh. All., 172 Wn.2d at 720 ("[T]he issue of whether the search was reasonably calculated and therefore adequate is separate from whether additional responsive documents exist but are not found."); Kozol v. Wash. State Dep't of Corr., 192 Wn. App. 1, 8, 366 P.3d 933 (2015) ("When an agency does not find a record that should exist, the question for review is whether or not *the search* was adequate." (emphasis added)). Accordingly, the trial court abused its discretion by not quashing Shavlik's second subpoena and not entering a protective order prohibiting her from deposing Judge Appel pursuant to the third subpoena.

Shavlik disagrees and argues that "the deposition requested easily falls within the Neighborhood Alliance framework.". In Neighborhood Alliance, as noted above, our supreme court held that the civil rules control discovery in a PRA case and that discovery was thus "governed only by relevancy considerations." 172 Wn.2d at 708. Further, the court observed that what is relevant in a PRA case "includes *why* documents were withheld, destroyed, or even lost" and what the agency did to locate those documents. Id. at 718.

But in Neighborhood Alliance, the documents the agency disclosed to the requester had discrepancies indicating the agency's search was inadequate, see 172 Wn.2d at 711, 713 n.3, thus making discovery into the agency's search and its motives relevant. Furthermore, the requester filed suit only after efforts to resolve the discrepancies failed. Id. at 712. Here, by contrast, the record establishes that at the time Shavlik sought to depose Judge Appel, she had not even viewed the documents the County produced in response to her requests,

and her requests remained open pending inspection, which the County had postponed but not denied. While Neighborhood Alliance may stand for the proposition that relevant discovery in a PRA lawsuit is no less broad than in any other civil case, we are not persuaded that it is broad enough to allow a requester to file a PRA lawsuit *before* an agency has taken a final action on their request and, by doing so, depose a witness based on denial-of-access claims that are necessarily speculative because the requester has not even reviewed the responsive records.[5] Cf. Hobbs v. State, 183 Wn. App. 925, 935-36, 335 P.3d 1004 (2014) ("Under the PRA, a requester may only initiate a lawsuit to compel compliance with the PRA *after* the agency has engaged in some final action denying access to a record."). Neighborhood Alliance is distinguishable and does not control.

Shavlik also argues that the trial court did not abuse its discretion because it placed limitations on the scope of Judge Appel's deposition and the County failed to show "specific harm" justifying entry of a protective order. But even with limitations, the trial court still allowed Shavlik to depose Judge Appel about his possession or knowledge of records responsive to Shavlik's records requests. Because Judge Appel's testimony about these matters was not relevant to

---

[5] Shavlik claims that the County violated the PRA by charging her a fee to inspect the responsive documents. But the record reflects that the County specifically advised that contrary to regular policy, because of COVID-19, it would not close her requests based on nonpayment "until the Proclamation is rescinded by gubernatorial or legislative action or termination of the COVID-19 State of Emergency, whichever occurs first." Further, the County offered to schedule an inspection once in-person business resumed and, in the meantime, gave Shavlik the option to pay to obtain copies or view scanned documents in an "online inspection." That Shavlik declined the latter alternatives neither establishes that the County charged Shavlik for an inspection nor alters the fact that at the time the trial court authorized Judge Appel's deposition, Shavlik still had not inspected any of the responsive records the County had produced.

Shavlik's PRA claims against the County, his deposition was not justified regardless of the limitations placed thereon and without any further showing of harm. See Rhinehart v. Seattle Times Co., 98 Wn.2d 226, 232, 654 P.2d 673 (1982) (scope of discovery extends only to "relevant and not privileged" matters).

Finally, Shavlik contends that she should have been allowed to question Judge Appel about whether his declaration in support of the County's motion to quash "was made in good faith." Shavlik relies on Nissen v. Pierce County, where our supreme court stated that an agency can satisfy its burden to show it conducted an adequate search for records by presenting employees' "good faith [and] 'reasonably detailed, nonconclusory affidavits' attesting to the nature and extent of their search." 183 Wn.2d 863, 885, 357 P.3d 45 (2015) (quoting Neigh. All., 172 Wn.2d at 721). She also asserts that Judge Appel initiated a "retaliation campaign" against her by sanctioning her in the 2017 lawsuit and that the County "has a history of stalling with respect to Shavlik," as evidenced by a sanction imposed in a King County lawsuit. But Shavlik provides no details about the other lawsuit, and in any case, her assertions are not supported by any references to the record. Thus, we do not consider them. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments unsupported by references to the record or citation to authority need not be considered). Moreover, Nissen is inapposite because Judge Appel's declaration was not submitted to demonstrate the adequacy of the County's search, but to support the County's motions to protect him from being subpoenaed for deposition. Cf. Nissen, 183 Wn.2d at 886 (purpose of Nissen affidavit is to give requester and

trial court a basis to determine whether withheld material was indeed nonresponsive). Shavlik argues that she "should have an opportunity to cross examine the former prosecutor to determine what kind of records he possesses that could arguably be responsive so that the court could review them," but she cites no authority to support that proposition. And again, Shavlik did not even review the records the County provided in response to her requests. Thus, the relevance of any records Judge Appel might possess to her claims against the County about its compliance with the PRA, when he last worked at the SAU unit in 2009, is entirely speculative. Cf. Forbes, 171 Wn. App. at 867, 869 (trial court appropriately declined to review documents in camera where requester "did not have any clear articulation as to why such a review would be appropriate; thus, the request amounted to nothing more than a fishing expedition").

We reverse and remand to the trial court for further proceedings consistent with this opinion.

_____
Chung, J.

WE CONCUR:

_____        _____
Feldman, J.                                            Smith, C.J.