IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| RAMIRO VALDERRAMA, | No. 86195-6-I |
| Appellant, | |
| v. | PUBLISHED OPINION |
| CITY OF SAMMAMISH, | |
| Respondent. | |

BOWMAN, J. — Ramiro Valderrama sued the city of Sammamish (City), alleging that the City violated the Public Records Act (PRA), chapter 42.56 RCW, by failing to adequately search for and produce records of communications between council members and citizens stored on the council members' private devices. The trial court granted summary judgment for the City. Because the City shows it performed an adequate search under the PRA, we affirm.

FACTS

Valderrama is a former City council member. On January 6, 2022, he submitted a public records request (PRR) to the City, seeking communications between council members and citizens on "external channels" like "WhatsApp, Signal, Slack, Telegram, etc." Specifically, he requested "all communications from all Council Members since 2019 with Miki Mullor . . . and also Michael Scoles using any of these or similar WeChat etc. channels." The City identified Valderrama's request as PRR 4241. At that time, the following council members

were in office: Amy Lam, Kali Clark, Karen Howe, Kent Treen, Ken Gamblin, Christie Malchow, and Karen Moran.

Two days later on January 8, Valderrama submitted the same PRR but expanded it to include "telephone call logs" and "any correspondence with the wife of Miki Mullor." The City identified Valderrama's second request as PRR 4244. On January 13, the City notified Valderrama that the first installment of records related to PRR 4241 and PRR 4244 would be available by February 28, 2022.

Then, on January 28, 2022, Valderrama filed a broader request that included "all Council Members since 2018."[1] The next day, he amended the request. That request stated:

> Council Members have been using external channels for communication with citizens/residents including but not limited to: WhatsApp, Signal, Slack, Telegram, etc. I would like to receive copies of all communications and copies of telephone call logs/lists of calls made to citizens from all Council Members since 2019 with any resident using any of these or similar channels [including] WeChat etc. channels.

The City identified Valderrama's third request as PRR 4280. On February 4, the City notified Valderrama that a first installment of records related to PRR 4280 would also be available by February 28.

On February 28, 2022, the City e-mailed the current and former council members to notify them about Valderrama's requests and ask them to search their personal devices and accounts for responsive records, provide responsive

---

[1] By the January 28 request, council member Gamblin had resigned.

records to the City, and complete *Nissen*[2] affidavits. The City attached blank template affidavits to its e-mails.

The City then worked with its own attorneys and sought advice from outside counsel to adequately respond to Valderrama's requests. It communicated with Valderrama about the status of his requests and worked with the council members to obtain affidavits, clarify the scope of the requests, and answer related questions. The City's public disclosure officer attested that she worked "extensively with the City's attorneys to draft *Nissen* Declarations/Affidavits for former Council[ ]members . . . and then work[ed] with council[ ]members to customize and finalize [them]."

Between February and June 2022, the City produced five installments of affidavits and records responsive to PRRs 4241, 4244, and 4280. With each production, the City provided Valderrama status updates and estimated dates for further installments. In June 2022, Valderrama agreed that the City could close PRR 4241 because the remainder of the request was duplicative of PRR 4244. PRR 4244 and PRR 4280 remained open.

After June 2022, the City's installments for PRR 4244 slowed as it awaited outstanding affidavits from former council members Chris Ross and Gamblin. The City asked Ross and Gamblin several times to provide responsive records and execute affidavits. On November 30, 2022, Ross provided the City

---

[2] *Nissen v. Pierce County*, 183 Wn.2d 863, 357 P.3d 45 (2015). Under *Nissen*, if an employee stores or is in control of agency records, they must submit an affidavit with sufficient facts showing withheld personal records are not public records under the PRA. *Id.* at 886.

his affidavit, explaining that he completed his search and found no responsive records. The City sent the affidavit to Valderrama that same day.

In January 2023, the City reminded Gamblin that he had not provided records or an affidavit and warned him that it may take legal action against him to obtain any public records. On February 6, 2023, Gamblin e-mailed the City his completed *Nissen* affidavit, asserting that he searched his personal devices and accounts and declaring that he provided all responsive records. The same day, the City sent the affidavit to Valderrama and closed PRR 4244.

As to PRR 4280, between June 2022 and March 2023, the City provided Valderrama rolling record installments at least once every month except for November[3] and February. The records included screenshots, voice mails, WhatsApp transcripts, and Facebook messages. The City also provided signed affidavits that council members produced as they completed their searches.

On March 2, 2023, Valderrama told the City that the only outstanding records were those from council member Treen. A week later, Valderrama requested updated affidavits from two other council members, and the City provided them. In late March, the City provided Valderrama an affidavit from Treen, explaining that he had turned over all responsive records.

Meanwhile, on March 9, 2023, Valderrama sued the City, alleging that it violated the PRA by failing to conduct an adequate search for his requested

---

[3] In October 2022, the City told Valderrama that it believed it had fulfilled his request and closed PRR 4280. But after receiving a letter from Valderrama's attorney asking the City to reconsider, the City reopened PRR 4280 in November.

records and failing to promptly make those records available for inspection and copying.

After Valderrama filed suit, the City continued to produce responsive records and affidavits as it received them. By November 2023, the City had provided Valderrama hundreds of responsive documents and 43 *Nissen* affidavits from former and current council members and other City staff.

In November 2023, the City moved for summary judgment dismissal of Valderrama's lawsuit, arguing that it conducted an adequate search for the requested records and provided Valderrama all public records responsive to his requests. Valderrama moved for partial summary judgment, asserting the City violated the PRA by failing to conduct an adequate search for the records. He argued that the evidence showed council members Gamblin, Malchow, and Treen executed their affidavits in bad faith and that the City should have sued the council members, and he sought "forensic examination of [their] devices and accounts." After oral argument, the trial court issued a written order granting summary judgment for the City and denying Valderrama's motion.[4]

Valderrama appeals.

## ANALYSIS

Valderrama argues the trial court erred by granting summary judgment for the City because the City failed to conduct an adequate search for records

---

[4] In its order, the court notes that Valderrama conceded at oral argument that there were no outstanding issues with PRRs 4241 or 4244. The record on appeal does not include a transcript of oral argument, but we presume the trial court's documented concession is accurate. The City notes the concession in its response brief on appeal and Valderrama does not dispute the concession in his reply. As a result, we address Valderrama's arguments as they apply to only PRR 4280.

5

relevant to his requests. According to Valderrama, evidence showed that council members Gamblin, Malchow, and Treen executed their affidavits in bad faith and that the City "took no effective action to compel compliance with the PRA."[5] We disagree.

We review de novo a grant of summary judgment and engage in the same inquiry as the trial court.[6] *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 715, 261 P.3d 119 (2011). A court should grant summary judgment when, "viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *West v. City of Tacoma,* 12 Wn. App. 2d 45, 69, 456 P.3d 894 (2020). Neither mere allegations nor conclusive statements raise issues of material fact sufficient to preclude summary judgment. *Id.* at 70.

We also review agency actions under the PRA de novo. *Neigh. All.*, 172 Wn.2d at 715. The PRA "is a strongly worded mandate for broad disclosure of public records." *Id.* at 714. Its purpose is to provide "the public access to information about every aspect of state and local government." *Nissen*, 183 Wn.2d at 874. "We liberally construe the PRA to promote the public interest." *West,* 12 Wn. App. 2d at 70.

---

[5] For the first time on appeal, Valderrama and amicus curiae the Washington Coalition for Open Government argue that the City's public records policies violate the PRA. Because Valderrama did not make that argument below, we decline to address it. RAP 2.5(a) (we "may refuse to review any claim of error which was not raised in the trial court").

[6] Valderrama argues that the trial court did not correctly apply the law under the PRA, improperly resolved questions of fact, and misconstrued the record. Because we review a grant of summary judgment de novo, we need not reach these issues.

A "public record" is any writing containing information relating to government conduct "prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." RCW 42.56.010(3). An agency's public records include its employees' work product so long as an employee prepares, owns, uses, or retains it "*within the scope of their employment.*" *Nissen*, 183 Wn.2d at 877.[7] This includes work product located on personal devices like cell phones. *Id.*

Once an agency receives a request for public records, it must perform "an adequate search" for the records. *Nissen*, 183 Wn.2d at 885. Courts determine the adequacy of a search using a reasonableness standard that depends on the facts of each case. *Neigh. All.*, 172 Wn.2d at 720. An agency's search must be more than perfunctory. *Id.* It must be "reasonably calculated to uncover all relevant documents." *Id.* Still, an agency need search only those places where a responsive record is "*reasonably likely*" to be found, not "*every* possible place a record may conceivably" exist. *Id.*

An agency bears the burden of showing beyond material doubt that it conducted an adequate search. *Neigh. All.*, 172 Wn.2d at 720-21. When reviewing an agency's search, we focus on whether the search was adequate, not on whether unproduced responsive documents exist. *Id.* at 719-20; *see also West,* 12 Wn. App. 2d at 79 ("the mere fact that a record is eventually found does not itself establish the inadequacy of an agency's search"). "We review the scope of [an] agency's search as a whole." *West,* 12 Wn. App. 2d at 79.

---

[7] Emphasis added.

If an employee stores or is in control of agency records, we must interpret the PRA to balance the employee's privacy rights with the public's interest in government accountability. *See Nissen*, 183 Wn.2d at 884. So, the onus remains with an agency to perform an adequate search for records, but the "agency employees are responsible for searching their files, devices, and accounts for records responsive" to a PRA request. *Id.* at 885-86. Employees must produce responsive public records to the employer agency, and the agency then determines whether any of the records are exempt from production and discloses the records to the requestor. *Id.* at 886.

"To satisfy the agency's burden to show it conducted an adequate search for records, we permit employees in good faith to submit 'reasonably detailed, nonconclusory affidavits' " about the "nature and extent of their search." *Nissen*, 183 Wn.2d at 885 (quoting *Neigh. All.*, 172 Wn.2d at 721). The affidavit must explain why withheld information is not a "public record" under the PRA. *Id.* at 886. "So long as the affidavits give the requester and the trial court a sufficient factual basis to determine that withheld material is indeed nonresponsive, the agency has performed an adequate search under the PRA." *Id.* When done in good faith, this procedure allows an agency to satisfy its duty to search for and disclose public records without unnecessarily infringing on its employees' constitutional rights. *Id.* at 886-87. An agency's affidavits are entitled to a presumption of good faith. *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 867, 288 P.3d 384 (2012).

8

Here, after receiving Valderrama's PRA requests for council members' communications using "external channels," the City determined that responsive records were likely located on current and former council members' private devices. So, the City contacted current and former council members who were in office during the time relevant to Valderrama's requests and informed them of each PRR. It asked the council members to conduct "adequate searches" of their personal devices and accounts for responsive records, provide responsive records, and complete *Nissen* affidavits describing the nature and extent of their searches. It told the council members that under the guidelines of the Municipal Research and Services Center, which cites *Nissen*,

> "[t]he affidavit must be 'reasonably detailed' and 'nonconclusory,' and should describe the accounts, devices and locations searched and the names and search terms used to locate responsive records."

The City then provided Valderrama rolling installments of responsive records as it received them from council members, maintaining frequent contact with Valderrama to answer his questions and give production updates. And when council members did not respond to the City's requests, it followed up and continued to ask for records, even warning some council members that it may take legal action if they failed to search for and provide responsive records and an affidavit.

As council members completed their searches, they sent the City responsive documents and executed *Nissen* affidavits explaining the nature and extent of their searches and why withheld documents were not responsive to the PRRs. For example, in council member Gamblin's January 2023 affidavit, he

9

explained that he searched his WhatsApp and Telegram applications on his personal phone for "messages . . . with Sammamish residents, related to [C]ity business." He conducted the search by reviewing "all of the chat sessions" with Sammamish residents and "messages sent or received" during his term. He also attested he reviewed Facebook and Facebook Messenger for responsive records and did not find any related to City business, but he was continuing to search those applications. He later testified that he had provided all responsive records. Gamblin certified that any records withheld "are either personal in nature . . . or are not responsive to the relevant request."

Council member Malchow submitted four affidavits describing her searches related to PRR 4280. She testified that she made copies of all the responsive public records she found on encrypted applications accessible to her and provided them to the City. She did this by "opening the [application]," "taking screenshots" of conversations, and redacting information unrelated to City business. The City later asked Malchow to provide the records unredacted. But by then, Malchow had deleted several of the records from her laptop and had trouble retrieving them. So, in a subsequent affidavit, she described how she contacted WhatsApp, Apple, and another council member for help and was ultimately able to recover "about 2/3 of [those] records." She attached the responsive records to her affidavits and certified that any withheld records are "either personal in nature . . . or are not responsive to the relevant request."

Finally, council member Treen submitted three affidavits related to PRR 4280. In a March 2023 affidavit, Treen testified that he searched his personal

10

devices and accounts, including Telegram and WhatsApp. And he specified that his search included terms like "city of Sammamish, "town center," and "STCA."[8] In a subsequent affidavit, Treen added that he also searched Slack and Facebook Messenger for records, where he reviewed the content of his message threads individually but did not find messages related to City business. Rather, the messages were related to family matters, campaign matters, or his capacity as a Sammamish resident. Treen attested that to his recollection, he had not communicated with citizens about City business through WhatsApp, Slack, Telegram, or Facebook Messenger. He certified that any records withheld "are either personal in nature . . . or are not responsive to the relevant request."

The record shows that the City timely responded to Valderrama's PRRs and promptly sought responsive records from those current and former council members most likely to possess them. The City then provided Valderrama all responsive public records received from the council members as well as reasonably detailed, nonconclusory affidavits showing the nature and extent of those searches and explaining why certain records were not responsive to the requests.

Still, Valderrama contends that the City's search was inadequate. He argues evidence shows that council members Gamblin, Malchow, and Treen executed their affidavits in bad faith and that the City "took no effective action to

---

[8] STCA LLC is a land developer with many projects in the City.

11

compel compliance with the PRA."[9]

As to Gamblin and Malchow, Valderrama fails to show evidence of bad faith. Valderrama argues that Gamblin executed his affidavit in bad faith because he delayed responding to the City's search request and did not search his Slack account for responsive documents. But Valderrama fails to explain how Gamblin's delay in responding to the City amounts to bad faith. And he points to no evidence that Gamblin used his Slack account for City business.[10]

Valderrama alleges that Malchow acted in bad faith because text messages from 2020 "show she intentionally used encrypted applications to keep her communications secret" and intentionally deleted public records. But Malchow's stated reasons for using encrypted applications are not evidence that she searched for responsive documents to Valderrama's PRR in bad faith. And the evidence does not support the argument that Malchow intentionally deleted responsive records. Instead, Malchow explained that she timely provided all responsive records in redacted form. Then, after "a substantial amount of time" had passed, she deleted records from her laptop because its storage disc was "full." Even so, Malchow was able to retrieve about 2/3 of those documents and

---

[9] Valderrama also challenges in passing several other council members' affidavits as technically deficient. But he does not support his argument with citations to legal authority and analysis, so we do not address those claims. RAP 10.3(a)(6); *see also West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (when an appellant fails "to present developed argument for our consideration on appeal," we do not address the challenge).

[10] Valderrama also alleges Gamblin told a former colleague that he could manipulate depositions by feigning a lack of memory. But again, Valderrama fails to explain how that amounts to evidence Gamblin executed his *Nissen* affidavits in bad faith.

provide them in unredacted form.  Valderrama offers no evidence that Malchow redacted responsive information or deleted responsive records in bad faith.

Finally, Valderrama says evidence shows that council member Treen executed his *Nissen* affidavits in bad faith.  Valderrama points to a City information technology (IT) employee's testimony that Treen "asked him for help 'scrubbing' his phone" in February 2023, about three months before Treen executed his last affidavit.[11]  Treen claimed in deposition testimony that the request was to obtain information from his City-issued phone, not to delete information from his personal cell phone.  In any event, Valderrama is correct that this evidence presents a disputed issue of fact as to whether Treen sought to delete information from his cell phone.  But he is incorrect that the disputed fact is material to whether the City conducted an adequate search.

Valderrama insists that the evidence suggesting Treen may have acted in bad faith compelled the City to take additional action to ensure Treen complied with the PRRs.  Specifically, Valderrama suggests the City should have sued Treen to forensically examine his cell phone.  But the City did take additional action to confirm that Treen responded fully to Valderrama's requests.  It asked Treen if he would allow the City's IT director to search his private devices and accounts for public records responsive to outstanding PRRs.  But Treen refused.  And Valderrama cites no authority suggesting that to conduct an adequate

---

[11] Valderrama also points to a 2020 message that the then-City manager sent to Treen directing him to delete e-mails and the City's failure to require Treen to disclose those records as evidence of bad faith.  But Valderrama did not include e-mails as requested documents in his PRRs.  *See Cantu v. Yakima Sch. Dist. No. 7*, 23 Wn. App. 2d 57, 81-82, 514 P.3d 661 (2022) (a party seeking records under the PRA must identify the documents with reasonable clarity).

13

search for public records, an agency must sue its employee to forensically search their private devices for public records. *See State Constr., Inc. v. City of Sammamish*, 11 Wn. App. 2d 892, 906, 457 P.3d 1194 (2020) ("Where a party fails to cite to relevant authority, we generally presume that the party found none.").

Indeed, while our Supreme Court has not specifically addressed whether an agency suspecting bad faith must sue to forensically examine an employee's personal device, it has suggested that such an infringement on employees' privacy rights is unnecessary to conduct an adequate search. In *Nissen*, our Supreme Court recognized that its procedure for obtaining public records from employees' private devices "might be criticized as too easily abused or too deferential to employees' judgment." 183 Wn.2d at 887. But it reasoned that the procedure is not uniquely deferential because "an employee's judgment would often be required to help identify public records on a cell phone, even in an in camera review." *Id.* And, despite its imperfections, the process strikes an acceptable balance between personal liberty and government accountability. *See id.* at 884.

Because the record shows that the City conducted an adequate search for records responsive to Valderrama's requests, we affirm the grant of summary judgment for the City.

Valderrama also seeks attorney fees on appeal under RAP 18.1(a) and the PRA. Under RAP 18.1(a), we may award attorney fees on appeal if

"applicable law grants to a party the right to recover reasonable attorney fees."

And RCW 42.56.550(4) provides, in relevant part:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action.

A party "prevails" and is entitled to fees "when an agency wrongfully refuses to disclose or produce requested records." *See Neigh. All.*, 172 Wn.2d at 728.

Because the City conducted an adequate search and it did not wrongfully withhold records, Valderrama did not prevail on appeal and is not entitled to attorney fees.

We affirm summary judgment for the City.

Bumm, J

WE CONCUR:

Chung, J.                    Dwyer, J.

15