**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| BETTS PATTERSON & MINES, PS,<br><br>Appellant,<br><br>v.<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF REVENUE,<br><br>Respondent. | No. 86756-3-I<br><br>DIVISION ONE<br><br>ORDER GRANTING<br>MOTION TO PUBLISH |

Respondent State of Washington, Department of Revenue moved to publish the court's opinion filed on November 3, 2025. Appellant Betts Patterson & Mines, PS filed an answer to the motion. The court has determined that the motion should be granted. Therefore, it is

ORDERED that respondent's motion to publish the opinion is granted.

FOR THE COURT:

_____
Mann, J.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| BETTS PATTERSON & MINES, PS, | No. 86756-3-I |
| Appellant, | |
| v. | DIVISION ONE |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | PUBLISHED OPINION |
| Respondent. | |

MANN, J. — This case concerns the apportionment of a law firm's gross income for the purposes of Washington's business and occupation (B&O) tax. Betts Patterson & Mines (BPM) provides insurance coverage advice and defense litigation services to insurance companies. BPM and the Washington State Department of Revenue (Department) disagree as to where the benefit of the insurance litigation services is received. The Board of Tax Appeals (Board) concluded that the services were received at the location where litigation occurred. We agree with the Board and affirm.

I

BPM is a law firm with offices in Washington and Oregon. BPM provides various legal services, including providing client advice on insurance coverage and insurance defense litigation.

In 2010, the legislature changed the method for apportioning gross income for services to focus on where the customers received the benefit, which replaced the historic method that looked at where the services were performed. LAWS OF 2010, 1st Spec. Sess., ch. 23, § 101.

Prior to June 30, 2014, BPM did not apportion any of its revenues and reported all of its revenue as Washington gross income. BPM renewed its apportionment methods, and an accounting firm determined that BPM overpaid its B&O tax from June 1, 2010 to June 30, 2014.

In October 2014, BPM filed for a tax refund of $651,374. BPM calculated this number by apportioning the receipts to the billing address of the insurance companies. BPM explained that the billing address represented the claims administration and legal departments of its insurance company customers. BPM asserted that the legal department is where the customer receives the benefit of the insurance litigation and defense services.

The Department held that BPM's methodology of apportioning receipts was unreasonable and granted a partial refund totaling $51,668. BPM unsuccessfully appealed to the Department's Administrative Review and Hearings Division. BPM subsequently appealed to the Board of Tax Appeals (Board).

The Department moved for summary judgment. The Board granted summary judgment to the Department and concluded the benefit of BPM's insurance defense services was received in the jurisdiction where the settlement occurred, litigation was filed, or litigation occurred. King County Superior Court affirmed the Board's decision.

BPM appeals.

-2-

II

We review decisions by the Board under the Administrative Procedure Act (APA), ch. 34.05 RCW.  Echo Glob. Logistics, Inc. v. Dep't of Revenue, 22 Wn. App. 2d 942, 945, 514 P.3d 704 (2022).  Under the APA, a reviewing court may grant relief if the Board "erroneously interpreted or applied the law."  RCW 34.05.570(3)(d); Steven Klein, Inc. v. Dep't of Revenue, 183 Wn.2d 889, 895, 357 P.3d 59 (2015).  Because the Board's decision was on summary judgment, we must "overlay the APA 'error of law' standard of review with the summary judgment standard and review an agency's interpretation or application of the law de novo while viewing the facts in the light most favorable to the nonmoving party."  Echo Glob., 22 Wn. App. 2d at 945.  "A motion for summary judgment may be granted if the written record shows that, viewing the evidence in a light most favorable to the nonmoving party, there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law."  WAC 456-09-545; WAC 456-10-503.  "The burden of demonstrating the invalidity of agency action is on the party asserting invalidity."  RCW 34.05.570(1)(a).

A

BPM first argues that the Board erred in concluding that the benefit of BPM's insurance defense services was received at the location where litigation was filed.  We disagree.

Washington imposes a business and occupation (B&O) tax for the "act or privilege of engaging in business activities."  RCW 82.04.220.  "Washington's B&O tax system is 'extremely broad,' imposing a tax 'upon virtually all business activity carried on within the state.'"  Dynamic Res., Inc. v. Dep't of Revenue, 21 Wn. App. 2d 814, 819,

508 P.3d 680 (2022) (quoting Steven Klein, 183 Wn.2d at 896). In computing the B&O tax, taxpayers engaged in business in multiple jurisdictions are required to apportion their income so that they only pay tax on income apportioned to Washington. RCW 82.04.460; Smith v. State, 64 Wn.2d 323, 334, 391 P.2d 718 (1964).

To determine the amount owed for the B&O tax, the Department uses an apportionment formula. ARUP Labr'ys, Inc. v. State, 12 Wn. App. 2d 269, 280, 457 P.3d 492 (2020). To compute the apportionable income, RCW 82.04.462(3)(b)(i) provides that the taxable income is attributed to the state "[w]here the customer received the benefit of the taxpayer's service." In turn, for service-related businesses like BPM, "the benefit is received where the customer's related business activities occur." Former WAC 458-20-19402(303)(c), (c)(iv) (2015).[1] Finally, "[t]he express purpose of the change in the law was to require businesses that 'earn[] significant income from Washington residents from providing services' to 'pay their fair share of the cost of services that this state renders and the infrastructure it provides.'" Former WAC 458-20-19402(101) (quoting LAWS OF 2010, 1st Spec. Sess., ch. 23, § 101).

BPM asserts that its litigation services relate to the insurance companies' legal department, so the insurance companies receive the benefit of its services at the address of its legal department. In contrast, the Department argues that BPM's customers receive the benefit at the location of litigation because (1) BPM holds itself out to its customers as providing Washington specific litigation services, (2) its insurance company clients related business activities is the litigation, and (3) the helpful

---

[1] The regulation was amended on June 15, 2024, but it still provides that the customer receives the benefit of the service where the customer's related business activities occur. See WSR 24-11-073.

or useful effect of BPM's litigation services is realized in Washington. We agree with the Department.

ARUP is instructive. There, the taxpayer was a medical lab company that received bodily fluid and tissue samples from medical providers in all 50 states. ARUP, 12 Wn. App. 2d at 271. Medical providers would ship the samples to the lab, and ARUP would test the samples and send the results to the medical provider—the samples were not returned the customer. ARUP, 12 Wn. App. 2d at 271.

On appeal, Division Two of this court analyzed where ARUP's customers received the benefit of the services to determine where the income should be apportioned. ARUP, 12 Wn. App. 2d at 282. In making that determination, the court explained that it was necessary to decide where "ARUP's customers receive the helpful or useful effect of its services." ARUP, 12 Wn. App. 2d at 282. Because medical providers could not diagnose their patients until after receiving the result from ARUP, the court concluded that the benefit of ARUP's services was received where the medical providers were located. ARUP, 12 Wn. App. 2d at 282.

BPM asserts that ARUP supports its argument. We disagree. The "helpful or useful" effect of BPM's insurance litigation is having Washington attorneys handle the insurance companies' Washington-based litigation. The helpful and useful effect is when BPM's attorneys litigate in Washington on behalf of the insurance companies. Moreover, the benefit is realized at the disposition of the case. The benefit is not realized once BPM communicates the disposition of the case to the legal department.

Similarly, in LendingTree, LLC v. Department of Revenue, 12 Wn. App. 2d 887, 888, 460 P.3d 640 (2020), this court analyzed where customers received the benefit of

services from an online loan market company called LendingTree.  For the purposes of the B&O tax, LendingTree provided services for lenders located in Washington and reported income from those customers.  LendingTree, 12 Wn. App. 2d at 889.  The Department performed an audit on LendingTree and determined that LendingTree had not apportioned its income to Washington.  LendingTree, 12 Wn. App. 2d at 889.

On appeal, LendingTree argued that lenders received the benefit of the services at the lender's business location where they receive and evaluate referrals. LendingTree, 12 Wn. App. 2d at 892.  In response, the Department asserted that the lenders received the benefit of LendingTree's services where the consumer seeking the information is located.  LendingTree, 12 Wn. App. 2d at 892.  The Department relied on LendingTree's market and outreach to borrowers.  LendingTree, 12 Wn. App. 2d at 892. This court held that LendingTree's customers—the lenders—received the benefit of LendingTree's services at the location where they received and used the referrals. LendingTree, 12 Wn. App. 2d at 893-94.  This court reiterated, "[t]he focus must remain on the customer and where the customer benefits from the service."  LendingTree, 12 Wn. App. 2d at 894.

BPM argues that LendingTree supports its argument.  We disagree.  The insurance companies paid BPM, a regional law firm, to have Washington-licensed attorneys represent them in lawsuits in Washington.  The insurance companies receive the benefit of the services in the jurisdiction where the attorneys obtain results.  As explained in LendingTree, the focus must remain on the customer.  The customer is represented in Washington and receives the benefit of defense litigation in Washington.

In short, BPM's customers are the insurance companies. Insurance companies hire BPM to defend their policyholders in litigation started in Washington. But the helpful or useful effect of BPM's services is realized in Washington. Once litigation has been resolved, the benefit is immediately realized upon disposition of the case. This can be contrasted from BPM client advice services about coverage because it is providing the advice to the legal departments located outside of Washington. But in the case of its litigation services, the benefit is realized where the case is litigated. It is not realized once the legal department of the insurance company is made aware of the results.

For those reasons, the Board did not err when it concluded that the benefit of BPM's litigation services is received at the location where litigation occurred.

B

BPM argues that it is not commercially reasonable for BPM to track which jurisdiction the matter is litigated for accounting purposes and that the Board failed to make findings on this argument. We disagree.

Rule 19402 provides, in relevant part:

Receipts are attributed to states based on a cascading method or series of steps. The department expects that most taxpayers will attribute apportionable receipts based on (a)(i) of this subsection because the department believes that either the taxpayer will know where the benefit is actually received or a "reasonable method of proportionally attributing receipts" will generally be available. These steps are:

(a) Where the customer received the benefit of the taxpayer's service (see subsection (302) of this rule for an explanation and examples of the benefit of the service);

(i) If a taxpayer can reasonably determine the amount of a specific apportionable receipt that relates to a specific benefit of the

services received in a state, that apportionable receipt is attributable to the state in which the benefit is received. When a customer receives the benefit of the taxpayer's services in this and one or more other states and the amount of gross income of the business that was received by the taxpayer in return for the services received by the customer in this state can be reasonably determined by the taxpayer, such amount of gross income must be attributed to this state. This may be shown by application of a reasonable method of proportionally attributing the benefit among states. The result determines the receipts attributed to each state. Under certain situations, the use of data based on an attribution method specified in (b) through (f) of this subsection may also be a reasonable method of proportionally attributing receipts among states (see Examples 4 and 5 below).

(ii) If a taxpayer is unable to separately determine or use a reasonable method of proportionally attributing the benefit of the services in specific states under (a)(i) of this subsection, and the customer received the benefit of the service in multiple states, the apportionable receipt is attributed to the state in which the benefit of the service was primarily received. Primarily means, in this case, more than fifty percent.

Former WAC 458-20-19402(301)(a)(i), (ii). The regulation provides more steps if the taxpayer is unable to attribute receipts under subsection (a). Subsection (306) provides that a taxpayer is "'unable to attribute apportionable receipts' when the taxpayer has no commercially reasonable means to acquire the information necessary to attribute the apportionable receipts." Former WAC 458-20-19402(306). That subsection also provides the following examples:

**Example 33.** One office of ZYX LLC has information that can easily be used to determine a reasonable proportional attribution of receipts, but does not provide this information to the office preparing the tax returns. ZYX LLC must use the information maintained by the marketing office to attribute its receipts.

**Example 34.** CBA, Inc. is entitled to receive information from an affiliate or unrelated third party which it could use to determine where the benefit of its services is received but chooses not to obtain that information. CBA,

Inc. must use the information maintained by the affiliate or unrelated third party to attribute its apportionable receipts.

**Example 35.** Same facts as Example 34, except that the information is raw data that must be formatted and otherwise processed at a cost that exceeds a reasonable estimate of the possible difference in the amount of tax CBA, Inc. would owe if used another attribution method authorized in subsection (301) (b) through (f) of this rule. In this case, it is not commercially reasonable for CBA, Inc. to use this data to determine where to attribute its income.

BPM relies on the declaration from its managing shareholder Lawrence Gottlieb to demonstrate that it has no commercially reasonable means to attribute the receipts to the location where litigation occurred. Gottlieb stated that it would be extremely time consuming and resource intensive for BPM to monitor the sourcing of revenues for a matter based on the jurisdiction in which any subsequent litigation was filed. He explained that the jurisdiction in which the matter is litigated may change based on various venue proceedings.

Gottlieb's declaration is insufficient to show that the Department's method was commercially unreasonable. It does not contain specific information about the time and expense necessary to track the location of litigation services. Instead, the declaration only makes bald assertions that it would be difficult. This is insufficient to overcome summary judgment. Valderrama v. City of Sammamish, 33 Wn. App. 2d 318, 325, 561 P.3d 288 (2024), review denied, 4 Wn.3d 1023 (2025) ("Neither mere allegations nor conclusive statements raise issues of material fact sufficient to preclude summary judgment.").

BPM also relies on example in former WAC 458-20-19402(302):

**Example 4.** Assume Law Firm has thousands of charges to clients. It is not commercially reasonable for Law Firm to track each charge to each

client to determine where the benefit related to each service is received. Assume the scope of Law Firm's practice is such that it is reasonable to assume that the benefits of Law Firm's services are received at the location of the customer as reflected by the customer's billing address. Under these circumstances, Law Firm can use the billing addresses of each client as a reasonable method of proportionally attributing the benefit of its services.

But BPM fails to recognize the following example:

**Example 5.** Same facts as Example 4 except, Law Firm has a single client that represents a statistically significant portion of its revenue and whose billing address is unrelated to any of the services provided. In this case, using the billing address of this client would not relate to the benefit of the services. Using the billing address for this client to determine where the benefit is received would significantly distort the apportionment of Law Firm's receipts. Therefore, Law Firm would need to evaluate the specific services provided to that client to determine where the benefits of those services are received and may use billing address to attribute the income received from other clients.

Like example 5, using the billing address of the insurance companies' legal department is not representative of BPM's services. BPM's large insurance company clients hire the regional law firm to represent policyholders in Washington. The billing address does not fairly represent the apportionment of BPM's receipts. The Board correctly evaluated BPM's specific services and determined that the litigation defense services that are commenced in Washington should be apportioned in Washington. Because the billing address of the insurance companies would not be representative of all of BPM's work, the Board correctly analyzed its specific services and attributed the receipts accordingly. Lastly, since the Board concluded that BPM could attribute its receipts under subsection (a), it did not need to reach the argument that it was not commercially reasonable.

No. 86756-3-I/11

We affirm.

_____ Mann, J.

WE CONCUR:

_____ Coburn, J.

_____ , ACJ

-11-